## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **HI-TECH PHARMACEUTICALS INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: |
| | **)** | |
| **PIETER A. COHEN,** | **)** | |
| | **)** | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>COMPLAINT</u>

COMES NOW, the Plaintiff, Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), by and through the undersigned counsel of record, and hereby amends its Complaint against the Defendant, showing as follows:

### I.    <u>Parties</u>

1.    Hi-Tech is corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 6015-B Unity Drive, Norcross, Georgia 30071. Hi-Tech does substantial business within the State of Georgia, and throughout the United States, including manufacturing, sales, distribution, marketing and promotion of dietary supplement products, including products containing Acacia rigidula, and Hi-Tech enjoys an international reputation

for excellence in the dietary supplement industry. Hi-Tech has earned and maintained brand recognition, goodwill, and a positive reputation in the community of dietary supplements consumers, suppliers and retailers.

2.      Defendant Pieter A. Cohen ("Cohen") is an individual and general internist at the Cambridge Health Alliance and assistant professor of medicine at Harvard Medical School. Pieter A. Cohen may be served with process at 236 Highland Avenue, Somerville, Massachusetts 02143.

## II.      Jurisdiction and Venue

3.      This is an action for injunctive relief, compensatory and punitive damages against Defendant Cohen who has violated Massachusetts and Georgia law and published false and malicious statements about the safety and efficacy of dietary supplements containing Acacia rigidula manufactured by Hi-Tech and others and caused damage to Hi-Tech's business and its present and future business relations.

4.      This court has personal jurisdiction over defendant.

5.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391.

6.      Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1332(a)(1) through diversity of citizenship, as the action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

7.     Plaintiff is a corporation of the State of Georgia for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

8.     Defendant Cohen is a citizen of Massachusetts.

9.     Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Hi-Tech's claims arising from the laws of the State of Massachusetts as those claims are substantially related to those causes of action over which the Court has original jurisdiction.

### III. Summary of the Case

10.     Defendant Cohenhas published and/or uttered multiple false and malicious defamatory statements about the safety of dietary supplements containing Acacia rigidula manufactured by Hi-Tech and others and defamed and disparaged Hi-Tech's products and commercial reputation.

11.     The false statements published by Defendant conveyed to the average listener or reader, and the FDA the overall net impression that Hi-Tech illegally manufactures and sells products with a synthetic amphetamine isomer known as β-methylphenylethylamine (BMPEA) while falsely labeling the ingredient as Acacia rigidula.

12.     Thus, Defendant published false information that Hi-Tech is selling adulterated, dangerous and illegal products and is engaged in criminal activity.

13.     In an effort to pursue his crusade against dietary supplements, Defendant ignored fundamental canons and methods of scientific investigation and

3

integrity and published accusations which Defendant knew or should have known were false.

## IV. Statement of the Facts

### A.      Plaintiff Hi-Tech Pharmaceuticals, Inc., and its Products Containing Acacia rigidula.

14.     Acacia rigidula is a species of shrub or small tree in the legume family, *Fabaceae*. Its native range stretches from Texas in the United States south to central Mexico. The plant has been used in traditional medicine by Native Americans for many years to treat a variety of ailments. Acacia rigidula contains about 40 different chemical compounds and amines and has become famous for its promotion of weight loss and energy and its ability to elevate mood and metabolic rate. Among the many compounds is naturally occurring beta-methylphenylethylamine (BMPEA), which

is a phenylethylamine alkaloid.

15.     Hi-Tech's product is an extract of the Acacia rigidula plant.  Hi-Tech *developed* a proprietary process to produce an extract from the Acacia rigidula plant (raw materials) which contains BMPEA *as well as* other ingredients.  Hi-Tech expended vast resources to bring its Acacia extract to market and derives a substantial portion of its revenues through the sale of its branded products containing the ingredient as well as its sales through contract manufacturing and providing Acacia rigidula as a raw material.

16.    Hi-Tech's Acacia rigidula extract was standardized to contain, and make the level uniform per dose, many of the active alkaloids found by Texas A&M researchers in 1997 and 1998 while researching the Acacia species. Texas A&M enjoys a particularly strong reputation for excellence in the area of research and development related to Department of Veterinary Integrative Biosciences and Department of Agricultural and Life Sciences. The Acacia rigidula extract used in Hi-Tech products employs a proprietary extraction technology based, in part, on the research conducted at Texas A&M.

17.    *The* Acacia rigidula extract used by Hi-Tech has been continually lab-tested by several certified testing facilities and has been continually used and accepted for import by the FDA and U.S. Customs for use in dietary supplements since approximately 2004. The Acacia rigidula extract has been deemed safe enough to conduct human trials by several Internal Review Boards.

18.    Among the *well*-known Hi-Tech products containing Acacia rigidula are Fastin XRTM, Fastin Rapid ReleaseTM, LipodreneTM, Stimerex ESTM, and Black WidowTM, among others.

19.    Hi-Tech has also invested large sums of money on double-blind, placebo-controlled clinical trials of its products to ensure their safety and efficacy.

20.    Despite having sold many millions of doses of dietary supplement products containing Acacia rigidula since 2004, Hi-Tech is unaware of any report

of serious illness, injury, or death from any consumer of its Acacia rigidula products.

**B. Defendants' Attack on Acacia Rigidula and Plaintiff's Products.**

21.     On or about April 7 2015, Defendant caused to be published in a journal known as *"Drug Testing and Analysis"* [1] an article entitled, "An amphetamine isomer whose efficacy and safety in humans has never been studied, β-methylphenylethylamine (BMPEA), is found in multiple dietary supplements," which included a listing of Hi-Tech products purportedly tested by the Defendants. ("Defamatory Article")

22.     Defendant Cohen was the principal author of the Defamatory Article, which contained allegations that, when viewed by an average reader, would leave the impression that, among other things, Plaintiff's products containing Acacia rigidula are knowingly adulterated, misbranded, mislabeled, and dangerous to consumers.

23.     Upon information and belief, Defendant promoted and disseminated, or caused to be disseminated, the Defamatory Article and/or a press release regarding the aforementioned Defamatory Article to various broadcast, print, and internet news outlets.

---

[1]     The journal's articles typically focus on, among other things, sports doping and illicit/recreational drug use.

24.    As a result, Defendant Cohen gave interviews wherein provided further additional defamatory comments and statements critical of the FDA and Hi-Tech. Such further defamatory comments were subsequently broadcast or disseminated in over 200 interviews or news articles including, but not limited to:

- An April 7, 2015 video interview with CBS This Morning
- An online article by CBS at http://www.cbsnews.com/news/new-study-warns-against-dietary-supplements-containing-bmpea-calls-fda-action/
- An online article by USA today at http://www.usatoday.com/news/2015/04/07/weight-loss-supplements-amphetamines-sports/25380525/
- An April 23, 2015 New York Times article at: http://well.blogs.nytimes.com/2015/04/23/f-d-a-warns-supplement-makers-of-bmpea-stimulant-dangers/?_r=0

See Exhibit A for a listing of internet sites containing interviews or reports of the Defamatory Article and Defendant's further defamatory statements and comments.

25.    In the news articles and interviews Defendant falsely and defamatorily accused Plaintiff of selling products that are illegal and/or dangerous. Defendant Cohen was quoted as saying "BMPEA has not been tested in humans, but led to increased blood pressure in cats and dogs. These are things that are signals that in humans will later turn into heart attacks, strokes and maybe even sudden death."

26.    In the news articles and interviews Defendant Cohen also falsely and defamatorily states, "We took a look at a new replacement for ephedra the name for this is Acacia rigidula, but in fact, it does not have that plant in it at all. It has new, designer stimulant called BMPEA."

27.    This statement conveys a grossly inaccurate, false and defamatory impression that Acacia rigidula is not in Plaintiff's products and it instead uses an illegal synthetic substance in its place. In the articles and interviews Defendant Cohen also defamatorily states "There is not a single weight loss supplement on the market that is legal and that has been shown to lead to weight loss in humans," which implies that Plaintiff's products are not legal and/or not efficacious.

28.    Defendant Cohen claims to be an expert on weight loss and, therefore, knows or should know of a plethora of scientific studies on dietary supplements and their ingredients that have demonstrated their efficaciousness in promoting weight loss.

29.    In the news articles and interviews Defendant Cohen also defamatorily states "'Acacia rigidula' is code in the industry for a potent synthetic stimulant. They are using the name as a cover." Defendant's statement implies that Plaintiff's products do not, in fact, contain Acacia rigidula which is patently untrue.

30.    Defendant's published Defamatory Articles states "Check your shelf for any supplements with the words 'Acacia rigidula'" and that this is "the red-flag ingredient and another name for beta-methylphenylethylamine (BMPEA)," which would lead the reader to imply that Acacia rigidula is not a lawful ingredient and that Hi-Tech's products containing Acacia rigidula do not in fact contain a naturally

occurring ingredient like beta-methylphenylethylamine, but rather labeling BMPEA an illegal synthetic amphetamine analog.

31.     In the news articles and interviews Defendant Cohen also defamatorily states, "Some manufacturers of weight-loss supplements do list BMPEA on the label, but they imply that it comes from Acacia rigidula extract. However, there is no evidence that this is true." Defendant Cohen knows or should have known from a review of the existing scientific literature that naturally occurring BMPEA is found in Acacia rigidula.

32.     Defendant Cohen was asked in an interview about a statement released by Hi-Tech and provided to CBS News, that "Hi-Tech has sold over 1 billion doses since 2003 of Acacia rigidula and its alkaloids and have conducted numerous studies of these alkaloids and believe them to be safe and effective when used as directed."

33.     Defendant Cohen disagreed and falsely stated. "FDA's data suggests that the natural compounds found in Acacia rigidula are not present in these supplements regardless of the presence of BMPEA." Moreover, "BMPEA has never been found in Acacia rigidula or any other plant." In the news articles and interviews Defendant Cohen also states "BMPEA, which was presumably added to the Acacia rigidula products, has never been proved safe for human use" and that "BMPEA is in a sense, being tested on buyers," Cohen says. "The consumer becomes the guinea pig." Defendant Cohen's statements are false and imply that Plaintiff's products substitute

synthetic BMPEA for Acacia rigidula and that Plaintiff's products are unsafe and have not been tested for safety.

34.    In the articles and interviews Defendant Cohen also defamatorily states, "This is a brand new drug being placed into a number of supplements under the guise of a natural ingredient." Defendant Cohen's statement is false and defamatory in that it implies that Plaintiff's products are misbranded and illegal.

35.    Because Defendant did not review the existing scientific literature and did not conduct this testing with reliable scientific protocols, his testing for BMPEA in Plaintiff's products does not form a reliable basis for their allegations of adulteration or contamination.

36.    Defendant apparently did not do basic or sufficient research on Acacia rigidula or Hi-Tech's products before publishing their accusations because their statements were easily verifiable as false. A cursory review would have found double-blind, placebo controlled clinical studies on supplements containing Acacia rigidula performed on humans by Hi-Tech and clinical studies performed on VPX's weight loss product Meltdown that included BMPEA in its labeling.

37.    As a result of Defendant's numerous false and defamatory statements and comments, Hi-Tech has lost numerous customers and/or continues to lose customers, a substantial portion of its revenue, and a dramatic decrease in sales through contract manufacturing and providing Acacia rigidula as a raw material.

**COUNT I: LIBEL**

38.    Plaintiff Hi-Tech re-alleges and incorporates by reference herein the preceding Paragraphs above.

39.    Defendant published the false and defamatory accusations against Plaintiff as set forth above.

40.    Defendant published the false and defamatory accusations against Plaintiff as set forth above without any statutory, common law, or constitutional privilege.

41.    The false and defamatory accusations against Plaintiff published by Defendant were subsequently republished worldwide and on numerous Internet websites.

42.    Defendant's journal article and subsequent interviews and communications contain the following false or misleading statements (including purported lab tests and photographs) regarding Plaintiff's Acacia rigidula products containing b-methylphenylethylamine:

    (a)    That the amphetamine isomer b-methylphenylethylamine (BMPEA) was first synthesized in the early 1930's, but its efficacy and safety in humans has not been studied;

    (b)    That Acacia rigidula is "a new replacement for ephedra . . .but in fact, it does not have that plant in it at all. It has new, designer stimulant called BMPEA";

    (c)    That supplement products containing Acacia rigidula are potentially deadly. "Let's not wait until we have a body count," he said. "Just get the job done";

(d)    That BMPEA remained known only as a research chemical until early 2013;

(e)    That BMPEA has never been identified or extracted from Acacia rigidula, a shrub native to Southwestern United States and Mexico;

(f)    That the efficacy and safety of BMPEA has never been studied in humans; therefore, BMPEA's effect on human health is entirely unknown;

(g)    That BMPEA has not been sold as a food or supplement and, therefore, is not a legitimate supplement ingredient;

(h)    That consumers should be advised to avoid all supplements labeled as containing Acacia rigidula;

(i)    That "Acacia rigidula is code in the industry for a potent synthetic stimulant,..." "They are using the name as a cover ";

(j)    That "BMPEA has never been found in Acacia rigidula or any other plant";

(k)    That "[t]his is a brand new drug being placed into a number of supplements under the guise of a natural ingredient"; and

(l)    That "BMPEA is in a sense, being tested on buyers,..." "The consumer becomes the guinea pig."

43.    The communications of Defendant as set forth above constitute libel.

44.    The communications of Defendant as set forth above constitute libel per se in that they impute criminal activity to Plaintiff and/or make charges against Plaintiff in reference to its trade, business or profession calculated to injure it therein.

45.    The communications of Defendant as set forth above constitute libel per se in that impute actions to Plaintiff that injure its business reputation.

46.     The communications of Defendant as set forth above constitute libel per se in that they impute actions to Plaintiff that are defamatory and injurious to its reputation on their face and can be so understood without reference to any additional or extrinsic facts.

47.     Defendant's false and defamatory statements set forth above have caused and will continue to cause damage to Hi-Tech's consumer sales, brands, sales in the raw material and contract manufacturing divisions and loss of reputation and goodwill with regulatory authorities, vendors, business partners and customers.

48.     Defendant's false and defamatory statements set forth above are the direct and proximate cause of the damages alleged above.

49.     Additionally, as such statements amount to libel per se, Plaintiff has suffered additional damages.  The special damages and actual injury is not limited to out-of-pocket loss, and include but are not limited to impairment of standing in the community and marketplace.

50.     At least seven (7) days prior to the filing of this action, Defendant was informed that his communications regarding the subject matter herein were false and defamatory and were requested to retract their statements.

51.     Evidencing a reckless disregard for truth or falsity, Defendant intentionally disregarded and ignored the requested retraction.

52.    Prior to the published journal article and interview comments, Defendant knowingly and purposely avoided and ignored evidence establishing the falsity of the information they published and provided in the subsequent interviews when the overwhelming review of the scientific literature in the public domain stated Acacia rigidula and other acacia species naturally contained b-methylphenylethylamine, a phenylethylamine alkaloid. Evidencing a reckless disregard for truth or falsity, Defendants published accusations against Plaintiff and other manufacturers that clearly contradict known scientific facts of the natural presence of b-methylphenylethylamine in Acacia rigidula and other acacia species.

53.    Prior to the publication of the false and defamatory statements, Defendant knew or should have known of the natural presence of b-methylphenylethylamine, a phenylethylamine alkaloid, in Acacia rigidula and other acacia species.

54.    Evidencing a reckless disregard for truth or falsity, Defendant published *accusations* against Plaintiff without conducting even a cursory investigation to discover whether Plaintiff's products had been tested for safety (historically or clinically), which failure constitutes gross negligence.

55.    Defendant had actual knowledge that the accusations against Plaintiff were false prior to publication.

14

56.     Defendant's journal article, interviews and online comments with the media are accessible to Georgia residents, consumers, and third parties who do business with Plaintiff. Defendant's allegations have been published and read by third parties all across Massachusetts, Georgia, the United States and the world.

57.     As a result of Defendant's numerous false and defamatory statements and comments, Hi-Tech has lost numerous customers and/or continues to lose customers, a substantial portion of its revenue, and a dramatic decrease in sales through contract manufacturing and providing Acacia rigidula as a raw material. Additionally, as such statements amount to libel per se, Plaintiff has suffered additional damages.  The special damages and actual injury is not limited to out-of-pocket loss, and include but are not limited to impairment of standing in the community and marketplace.

58.     Plaintiff is therefore entitled to recover its aforementioned damages as well as punitive damages from Defendant.

## COUNT II: SLANDER

59.     Plaintiff Hi-Tech re-alleges and incorporates by reference herein the preceding Paragraphs above.

60.     Defendant verbally communicated the false and defamatory accusations against Plaintiff as set forth above.

61.     Defendant   verbally   communicated   the   false   and   defamatory accusations *against* Plaintiff as set forth above without any statutory, common law, or constitutional privilege.

62.     The   false   and   defamatory   accusations   against   Plaintiff   verbally disseminated   by   Defendant   were   subsequently   republished   worldwide   and   on numerous Internet websites.

63.     Defendant's   interviews   and   verbal   communications   contain   the following false or misleading statements regarding the Acacia rigidula products containing b-methylphenylethylamine:

(a)     That the amphetamine isomer b-methylphenylethylamine (BMPEA) was first synthesized in the early 1930's, but its efficacy and safety in humans has not been studied;

(b)     That Acacia rigidula is "a new replacement for ephedra . . .but in fact, it does not have that plant in it at all. It has new, designer stimulant called BMPEA";

(c)     That supplement products containing Acacia rigidula are potentially deadly. "Let's not wait until we have a body count," he said. "Just get the job done";

(d)     That BMPEA remained known only as a research chemical until early 2013;

(e)     That BMPEA has never been identified or extracted from Acacia rigidula, a shrub native to Southwestern United States and Mexico;

(f)     That the efficacy and safety of BMPEA has never been studied in humans; therefore, BMPEA's effect on human health is entirely unknown;

(g)     That BMPEA has not been sold as a food or supplement and, therefore, is not a legitimate supplement ingredient;

(h)   That consumers should be advised to avoid all supplements labeled as containing Acacia rigidula;

(i)   That "Acacia rigidula is code in the industry for a potent synthetic stimulant,..." "They are using the name as a cover ";

(j)   That "BMPEA has never been found in Acacia rigidula or any other plant";

(k)   That "[t]his is a brand new drug being placed into a number of supplements under the guise of a natural ingredient"; and

(l)   That "BMPEA is in a sense, being tested on buyers,..." "The consumer becomes the guinea pig.

64.   The verbal communications of Defendant as set forth above constitute slander.

65.   The verbal communications of Defendant as set forth above constitute *slander* per se in that they impute criminal activity to Plaintiff and/or make charges against Plaintiff in reference to its trade, business or profession calculated to injure it therein.

66.   The verbal communications of Defendant as set forth above constitute slander per se in that they impute actions to Plaintiff that injure its business reputation.

67.    The verbal communications of Defendant as set forth above constitute *slander* per se in that they impute actions to Plaintiff that are defamatory and injurious to its reputation on their face and can be so understood without reference to any additional or extrinsic facts.

68.   Defendant's false and defamatory verbal statements set forth above have caused and will continue to result in damage to Hi-Tech's consumer sales,

brands, sales in the raw material and contract manufacturing divisions, reputation and goodwill with regulatory authorities, vendors, business partners and customers.

69.     Defendant's false and defamatory verbal statements set forth above are the *direct* and proximate cause of the damages alleged above.

70.     Additionally, as such statements amount to libel per se, Plaintiff has suffered *additional* damages.  The special damages and actual injury is not limited to out-of-pocket loss, and include but are not limited to impairment of standing in the community and marketplace.

71.     At least seven (7) days prior to the filling of this action, Defendant was informed that their communications regarding the subject matter herein were false and defamatory and were requested to retract their statements. Evidencing a reckless disregard for truth or falsity, Defendant intentionally disregarded and ignored the requested retraction.

72.     Prior to their published journal article and interview comments, Defendant *knowingly* and purposely avoided and ignored evidence establishing the falsity of the information they published and provided in the subsequent interviews when the overwhelming review of the scientific literature in the public domain stated Acacia rigidula and other acacia species naturally contained b-methylphenylethylamine.

73.     Evidencing a reckless disregard for truth or falsity, Defendant made verbal accusations against Plaintiff and other manufacturers that clearly

18

contradicted known scientific facts of the natural presence of b-methylphenylethylamine in acacia rigidula and other acacia species.

74.    Prior to the publication of the false and defamatory statements, Defendant *knew* or should have known of the natural presence of b-methylphenylethylamine, a phenylethylamine alkaloid, in Acacia rigidula and other Acacia species.

75.    Evidencing a reckless disregard for truth or falsity, Defendant made verbal *accusations* against Plaintiff without conducting even a cursory investigation to discover whether Plaintiff's products had been tested for safety (historically or clinically), which failure constitutes gross negligence.

76.    Defendant had actual knowledge that their verbal accusations against Plaintiff

were false prior to publication.

77.    Defendant's journal article, interviews and other verbal comments were and are accessible to residents of Massachusetts, Georgia and other states, consumers, and third parties who do business with Plaintiff. Defendant's allegations have been published and read by third parties all across Massachusetts, Georgia, the United States and the world.

78.    As a result of Defendant's numerous false and defamatory statements and comments, Hi-Tech has lost numerous customers and/or continues to lose customers, a substantial portion of its revenue, and a dramatic decrease in sales

through contract manufacturing and providing Acacia rigidula as a raw material. Additionally, as such statements amount to libel per se, Plaintiff has suffered additional damages. The special damages and actual injury is not limited to out-of-pocket loss, and include but are not limited to impairment of standing in the community and marketplace.

79.    Plaintiff is therefore entitled to recover for the aforementioned damages, as *well* as punitive damages from Defendant.

## COUNT III
## TRADE LIBEL/PRODUCT DESPARAGEMENT

80.    Hi-Tech re-alleges and incorporates by reference the preceding Paragraphs above.

81.    Defendant Cohen has made false and defamatory statements regarding Plaintiff and its products, services and employees and Defendant Cohen knew such statements were false at the time they were made.

82.    The statements were made with malice and intent to injure Plaintiff's business and business reputation.

83.    As a result of such trade libel, Plaintiff has suffered injury and damage to its business and goodwill in an amount to conform to proof at time of trial, but in no event less than the jurisdictional minimum of this court.

84.    The above described statements by Defendant Cohen were made with malice, oppression and fraudulent intent and intended to cause injury to Plaintiff,

thereby entitling Plaintiff to an award of exemplary and punitive damages, according to proof.

## COUNT IV:
## VIOLATIONS OF THE MASSACHUSETTS UNIFORM
## DECEPTIVE TRADE PRACTICES ACT

85.    Plaintiff Hi-Tech re-alleges and incorporates by reference herein preceding Paragraphs above.

86.    Defendant Cohen's public communications set forth above represented that Plaintiff's products have characteristics and ingredients that they do not have.

87.    Defendant Cohen's public communications set forth above misrepresented that Plaintiff's products were of a quality and standard that would leave the average consumer to believe they are adulterated, misbranded, and mislabeled.

88.    Defendant Cohen's public communications set forth above disparaged Plaintiff's products by false and misleading representations of fact.

89.    Defendant Cohen's conduct therefore violates the Massachusetts Uniform Deceptive Trade Practices Act, in that Defendant Cohen has disparaged Plaintiff and its products.

90.    As a direct and proximate result of Defendant's violation of Plaintiff's rights, Plaintiff received a warning letter from the FDA on or about April 22, 2015 requiring that Plaintiff cease using Acacia rigidula in its products. Plaintiff has also

lost substantial sales, lost goodwill from its vendors, customers, contractors, the general public, and a diminishment of its reputation. Plaintiff is therefore entitled to injunctive relief and costs.

## COUNT V:
## PERMANENT INJUNCTIVE RELIEF

91.   Hi-Tech re-alleges and incorporates by reference herein the preceding Paragraphs above.

92.   For the reasons stated above, Hi-Tech asserts a claim for permanent injunctive relief to prevent the ongoing harm to Hi-Tech's brands, business reputation, and goodwill.

93.   As shown from the facts above, unless Defendant is permanently restrained from further dissemination of defamatory, false and misleading information, Hi-Tech will continue to suffer reputational injury and lost income.

94.   Plaintiff Hi-Tech does not have an adequate remedy at law for all of the damages caused by Defendant. Unless the injunctive relief requested herein is granted, Plaintiff will suffer continue to suffer irreparable harm by the Defendant's false and defamatory communications about its products.

## PRAYER FOR RELIEF

Hi-Tech therefore requests the Court to enter judgment in its favor and grant the following relief:

(a)   Trial by jury;

(b)    An award of special and compensatory damages in an amount to be determined at trial, against Defendants and in favor of Hi-Tech for the injury to its commercial reputation and business as a result of the disparaging and defamatory statements made by Defendant Cohen and those acting in concert with him;

(c)    That judgment be entered against Defendant for punitive damages in an amount to punish and penalize Defendant and deter Defendant from repeating this unlawful conduct;

(d) That Defendant be ordered to publish a retraction of the articles and interviews and any other written or oral communication made by Defendant about Plaintiff's products;

(e) That all costs of this action be assessed against Defendant including attorneys' fees;

(f)    That Plaintiff be granted an assessment of pre-judgment and post-judgment interest on the recovered damages;

(g) That permanent injunctive relief be granted ordering Defendant Cohen, those acting in concert with him, their agents, attorneys, servants, employees, and other persons in active concert or participation with them, including the officers, directors, and employees of *Drug Testing and Analysis*, to:

(1)    Cease directly or indirectly publishing the defamatory statements contained on the *Drug Testing and Analysis* journal, and/or inviting or inciting others to republish the defamatory statements;

(2)    Remove all content from the *Drug Testing and Analysis* scientific journal that is published by John Wiley & Sons and any abstracted and/or indexed references in Chemical Abstract Services, EMBASE, MEDLINE/PUBMED, Science Citation Index Expanded, and Scopus; and cease publishing same, while strictly preserving such electronic evidence for consideration and use in further Court proceedings; and,

(h) Judgment in Hi-Tech's favor on all counts of the Complaint; and that this Court award such other relief as it deems equitable, just, and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and all applicable

law, Plaintiff requests a trial by jury on all issues so triable.

Dated: April 4, 2016

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.
99 Summer Street, Suite 1600
Boston, MA 02110
Tel: 617-737-3537
Fax: 617-737-3539

By:  s/Barry A. Guryan
        Barry A. Guryan, BBO# 214920

*Of counsel*:

James P. Flynn (*pro hac vice* motion forthcoming)
Jack Wenik (*pro hac vice* motion forthcoming)
EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
13th Floor
Newark, NJ 07102
Phone 973 642 1900
Fax 973 642 0099

Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
Telephone: (404) 786-6443
art@arthurleach.com
Georgia Bar No. 442025