EPSTEIN BECKER & GREEN, P.C.
99 Summer Street, Suite 1600
Boston, Massachusetts 02110
(617) 737-3537
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HI-TECH PHARMACEUTICALS, INC.,

Plaintiff,

v.

PIETER A. COHEN,

Defendant.

Civil Action No. 1:16-cv-10660-WGY

**PLAINTIFF'S RESPONSE TO DEFENDANT, PIETER A. COHEN'S, STATEMENT OF FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

1. On or around January 25, 2014, an article written by FDA scientists was published in the peer reviewed <u>Journal of Pharmaceutical and Biomedical Analysis</u> entitled "Determination of selected biogenic amines in *Acacia rigidula* plant materials and dietary supplements using LC-MS/MS methods." ("FDA Article"). <u>See</u> FDA Article attached hereto as <u>Exhibit 1</u>.

**Plaintiff's Response: Hi-Tech admits Fact 1 in so far as it accurately states the title of the referenced article.**

2. The FDA Article states: "[BMPEA] was not found in any of the authenticated samples of *A. rigidula* that we analyzed. Additionally, we did not find any literature describing its presence in any other botanical." <u>Exhibit 1</u>, p. 464-465.

**Plaintiff's Response: Hi Tech admits Fact 2 to the extent that it accurately quotes the FDA article, and notes that the FDA Article's reference to what the authors "did not find" is different in kind than the categorical, "unapologetic," and absolute statements made by Dr. Cohen his defamatory article and in the subsequent CBS and other media interviews, as reflected in Stipulated Facts paragraphs 7-9. Moreover, at the time Dr. Cohen published his defamatory article, literature did exist describing the presence of BMPEA and similar amines in plants. *See* Flynn Cert. ISO Plaintiff's Partial Summary Judgment Motion ("Flynn PSJ Cert.") ¶10, Ex. G.**

3. The FDA Article states: "[W]e have not found documentation of human data on the safety or biological effects or possible interactions of [BMPEA]." See <u>Exhibit 1</u>, p. 465.

**Plaintiff's Response: Hi Tech admits Fact 3 to the extent that it accurately quotes the FDA article, and notes that this article's reference to what the author's "have not found" is different in kind than the categorical, "unapologetic," and absolute statements made by Dr. Cohen in the subsequent CBS and other media interviews, as reflected in Stipulated Facts  paragraphs 7-9. Moreover, by the time Dr. Cohen published his defamatory article, documentation of human data pertaining to the study of BMPEA or supplements containing BMPEA did exist. *See* Flynn PSJ Cert. ¶10, Ex. G.**

4. The FDA Article reports that FDA scientists tested 21 dietary supplements that labeled *Acacia rigidula* as an ingredient, and found that nine of the tested supplements contained BMPEA. <u>Exhibit 1</u>, p. 465.

**Plaintiff's Response: Hi-Tech admits Fact 4 to the extent that it accurately reflects the FDA article's content, but states that this fact is immaterial to the truth or falsity of the defamatory statements made by Dr. Cohen.**

5.  On or around April 7, 2015, the Defendant, Dr. Pieter Cohen, was the first author of an article published in the peer reviewed journal Drug Testing and Analysis entitled "An amphetamine isomer whose efficacy and safety in humans has never been studied, β-methylphenylethylamine (BMPEA), is found in multiple dietary supplements." ("Cohen Article"). See Cohen Article attached hereto as Exhibit 2.

**Plaintiff's Response: Hi-Tech admits Fact 5 to the extent that it accurately reflects that Dr. Cohen authored the defamatory article and states the article's title. The title itself is misleading in that BMPEA is not an "amphetamine isomer."**

6.  The Cohen Article lists 21 supplements labeled as containing *Acacia rigidula* that were tested by Dr. Cohen and his co-authors. Exhibit 2, pp. 3-4.

**Plaintiff's Response: Hi-Tech admits Fact 6 to the extent that it accurately depicts one fact contained within the defamatory article authored by Dr. Cohen. This fact alone, however, is immaterial to the determination of whether the statements made therein or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so.**

7.  The Cohen Article states that 11 of the 21 supplements tested were found to contain BMPEA. Exhibit 2, pp. 3-4

**Plaintiff's Response: Hi-Tech admits Fact 7 to the extent that it accurately depicts one fact contained within the defamatory article authored by Dr. Cohen. This fact alone,**

**however, is immaterial to the determination of whether the statements made therein or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so. Furthermore, contrary to Dr. Cohen's defamatory statement that Hi-Tech is using the name Acacia rigidula "as a cover," (Dkt. #1 (Def, Ex. 4, par. 29)), Hi-Tech identified which of its products contain BMPEA on the label.** *See* **Flynn Cert. ISO Plaintiff's Opposition to Defendant's Summary Judgment Motion ("Flynn Opp. Cert.") ¶5; Ex. C (Wheat Dep. 27:14-25).**

8. The Cohen Article lists Hi-Tech as the manufacturer of 10 of the 21 supplements tested. However, only six of Hi-Tech's supplements were found in the Cohen Article to contain BMPEA. Exhibit 2, pp. 3-4.

**Plaintiff's Response: Hi-Tech admits Fact 8 to the extent that it accurately depicts facts contained within the defamatory article authored by Dr. Cohen. This fact alone, however, is immaterial to the determination of whether the statements made therein or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so.**

9. The Cohen Article states that manufacturers should "immediately recall all supplements containing BMPEA" and that the FDA should "use all its enforcement powers to eliminate BMPEA as an ingredient in dietary supplements." Exhibit 2, p. 5.

**Plaintiff's Response: Hi-Tech admits Fact 9 to the extent that it accurately quotes the defamatory article, and notes that the very quotation of an admonition directed at**

**private parties (manufacturers) beyond the FDA illustrates that Cohen was engaging in this article itself in more and other than petitioning activity alone.**

10. The Cohen Article further states that "[c]onsumers should be advised to avoid all supplements labeled as containing *Acacia rigidula*." Exhibit 2, p. 5.

**Plaintiff's Response: Hi-Tech admits Fact 10 to the extent that it accurately quotes the defamatory article, and notes that the very quotation of an admonition directed at private parties (consumers) beyond the FDA illustrates that Cohen was engaging in this article itself in more and other than petitioning activity alone.**

11. The Cohen Article has sections entitled: "Introduction," "Materials and methods," "Instrumentation," "Sample acquisition and preparation," "Chemical analysis," "Data analysis," "Results and discussion," "Conclusion," and "References." Exhibit 2.

**Plaintiff's Response: Hi-Tech admits Fact 11 to the extent that it accurately depicts the section titles contained within the defamatory article authored by Dr. Cohen. This fact is, to the contrary, one that demonstrates the lack of scientific support for a number of Dr. Cohen's statements as there is no test or measurement in his article that demonstrates if and how BMPEA was added to Hi-Tech products other than through acacia rigidula extract. This absence of testing or measurement illustrates the factual disputes remaining as to the determination of whether the statements made within the defamatory article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so.**

12. Following publication of the Cohen Article, United States Senators Richard Blumenthal and Dick Durbin wrote to the Acting Commissioner of the FDA, citing to the Cohen Article. See Blumenthal- Durbin letter attached hereto as Exhibit 3.

**Plaintiff's Response: Hi-Tech admits Fact 12 to the extent that it accurately describes when Senators Blumenthal and Durbin wrote to the FDA and that they cited Dr. Cohen's defamatory article. This fact, however, is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so.**

13. The Blumenthal-Durbin letter states: "Last week, the journal of *Drug Testing and Anlysis* published an alarming study in which researchers found deceptively labeled synthetic stimulant known as . . .[BMPEA], in 11 of 21 over-the-counter dietary supplements included in the analysis." Exhibit 3.

**Plaintiff's Response: Hi-Tech admits Fact 13 in so far as it accurate quotes a portion of the cited document, but Hi-Tech denies that the underlying document is accurate in so far as it would apply or be applied to Hi-Tech, and notes that it relies solely upon the flawed and defamatory article authored by Dr. Cohen. Moreover, it is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so.   The statement or implication that Hi-Tech "deceptively labeled" its products which contain BMPEA is**

**false - Hi-Tech identified which of its products contain BMPEA on the label.** *See* **Flynn Opp. Cert. ¶5; Ex. C (Wheat Dep. 27:14-25).**

14. The Blumenthal-Durbin letter states: "For too long, dietary supplement manufacturers have either failed to list BMPEA on product labels or have listed the stimulant as a 'natural botanical,' which the Food and Drug Administration's own scientists have disproved." Exhibit 3.

**Plaintiff's Response: Hi-Tech admits Fact 14 in so far as it accurate quotes a portion of the cited document, but Hi-Tech denies that the underlying document is accurate in so far as it would apply or be applied to Hi-Tech, and notes that it relies solely upon the flawed and defamatory article authored by Dr. Cohen. Moreover, it is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so. The statement or implication that Hi-Tech "failed to list BMPEA" on its products which contain BMPEA is false - Hi-Tech identified which of its products contain BMPEA on the label.** *See* **Flynn Opp. Cert. ¶5; Ex. C (Wheat Dep. 27:14-25).**

15. The Blumenthal-Durbin letter states that they were very "troubled by the FDA's inaction on this issue." Exhibit 3.

**Plaintiff's Response: Hi-Tech admits Fact 15 in so far as it accurate quotes a portion of the cited document, but Hi-Tech denies that the underlying document is accurate in so far as it would apply or be applied to Hi-Tech, and notes that it relies solely upon the flawed and defamatory article authored by Dr. Cohen as the basis for their position**

**taken. Moreover, it is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so.**

16. Prior to publication of the Cohen Article, many of Hi-Tech's products were labeled as containing *Acacia rigidula* contain BMPEA. See Complaint, ¶ 14; See Deposition of Jared Wheat attached hereto as Exhibit 4, p. 28.

**Plaintiff's Response: Hi-Tech admits Fact 16 to the extent that certain Hi-Tech products containing Acacia rigidula are also labeled as containing BMPEA, whereas some do not.**

17. Jared Wheat is the CEO of Hi-Tech Pharmaceuticals.

**Plaintiff's Response: Hi-Tech admits Fact 17. This fact, however, is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so.**

18. At his deposition, Mr. Wheat testified as follows:

Mr. Sullivan:  Okay. But prior to that article by Dr. Cohen, am I correct that Hi-Tech products labeled as containing Acacia rigidula, contained BMPEA?

Mr. Wheat: Almost always.

Q: All right.

A: Unless it was like a Acacia rigidula powder, versus an extract, or something of that nature. But I would say in 99 percent of the cases.

Exhibit 4, p. 28.

**Plaintiff's Response: Hi-Tech admits Fact 18 in so far as it accurately quotes the cited testimony, but denies it is probative of the point being urged by Defendant. Moreover, it is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that such statements were defamatory, were false, and knowingly so.**

19. At his deposition, Mr. Wheat testified:

Mr. Sullivan: Are you aware of BMPEA being either banned or not approved in any overseas market?

Mr. Wheat: Yes. Now there have started being - - Australia has banned it in the last couple years, as has Canada.

Exhibit 4, p. 196.

**Plaintiff's Response: Hi-Tech admits Fact 19 in so far as it accurately quotes the cited testimony, but denies it is probative of the point being urged by Defendant. Moreover, it is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that such statements were defamatory, were false, and knowingly so.**

20. Understanding that the Plaintiff disputes the validity and substance of these statements, on April 22, 2015, the FDA issued a warning letter to Hi-Tech, which states in part:

a. "Your product labeling lists the substance of R-beta-methylphenethylamine as a dietary ingredient in the form of an extract of *Acacia rigidula* (leaves). This

ingredient is also called, among other names, β-methylphenethylamine, βMePEA, or BMPEA (herein after referred to as BMPEA)."

b. "BMPEA is not a dietary ingredient within the definition set forth in section 201(ff)(1) of [the Federal Food, Drug, and Cosmetic Act] [21 U.S.C. § 321 (ff)(1))]. Declaring BMPEA in your product labeling as a dietary ingredient causes your products marketed as dietary supplements to be misbranded under section 403(a)(1) of the [Federal Food, Drug, and Cosmetic Act] [21 U.S.C. § 343 (a)(1)] in that the labeling is false or misleading in any particular."

c. "We request that you take prompt action to correct the violation cited above, as well as any other violations associated with [Hi-Tech's supplements] or other products marketed by your firm that contain BMPEA."

d. "Additionally, BMPEA is not approved as a food additive or prior sanctioned for use in dietary supplements. Further, FDA's review of this substance does not identify a basis to conclude the substance is GRAS for use in food."

See FDA Warning Letter attached hereto as Exhibit 5.

**Plaintiff's Response: Hi-Tech admits Fact 20 in so far as it accurately quotes a portion of the cited document, but Hi-Tech denies that the underlying document is accurate in so far as it would apply or be applied to Hi-Tech, and notes that (1) Defendant acknowledges that the "validity and substance" of the quoted statements are in dispute; and (2) Hi-Tech responded in full to each issue presented by the FDA letter.**

21. On April 2, 2015, Hi-Tech issued a press release which states in part:

a. "Thermo-Rx brand Acacia Rigidula Extract is a quantum leap in the field of weight loss backed by a clinical study – one showed an increase in the

metabolism by 22% in 45 minutes. The results seen with Thermo- Rx brand Acacia Rigidula Extract were compared by Hi-Tech Researchers to previous studies on Ephedrine – the Gold Standard for OTC diet aids. . . . The findings of the present study indicate that the increase in resting metabolic rate exhibited with 250 mg of Acacia Rigidula (12+%) are comparable to the findings of previous studies which reported that 10 to 30 mg ephedrine increased energy expenditure by 6.6 % to 10%."

b. "Since the controversy with ephedrine began several several [sic] years ago, companies have searched high and low to find an alternative ingredient for their weight loss products. Acacia Rigidula is not only such an alternative, but it may actually be superior to ephedra. Thermo-Rx is a unique proprietary plant extract derived from Acacia rigidula. Hi-Tech's overseas supplier worked with Hi-Tech to isolate four active ingredients from the plant. This highly purified plant extract is is [sic] standardized to 95% phenylethylamines. . . . The alkaloid profile in Thermo-Rx is unmatched by any other Acacia species due to its phenylethylamine content, as well as numerous other alkaloids and amines."

c. "Hi-Tech has worked diligently over the past 2 years to ramp up raw material production as we continue to get major brands wanting to include this one-of-a-kind weight loss ingredient in their formulas. Hi-Tech has many other major brands launching Acacia products in the next few months."

d. "These [clinical] findings indicate that Acacia Rigidula promotes significant increases in resting energy expenditure (12+%) still evident 3 hours post ingestion

with modest increased in hemodynamic measures (4-5% for HR, SBP). At this
time, it is not known for what time period energy expenditure remains elevated."

   e.   "The Acacia Rigidula alkaloids produce extreme energy and promote a sense of
        well-being. In a recent published study, these alkaloids produced a 12% increase
        in metabolic rate at the 3 hour mark. It was compared head-to-head with caffeine
        and caffeine only produced a 3.5% increase at the 3 hour mark. These results
        show Acacia is 400% greater at stimulating the metabolic rate than caffeine 3
        hours after consumption. This was also 20% stronger than 30 mg of Ephedrine
        and 82% stronger than 10 mg of Ephedrine."

   See April 2, 2015 Press Release attached hereto as Exhibit 6.

   **Plaintiff's Response: Hi-Tech admits Fact 21, and further states that these
   statements were made in press-release form in the ordinary course of Hi-Tech's
   business model for advertising its products. *See* Flynn Opp. Cert. ¶5; Ex. C (Wheat
   Dep. 68:5-14; 145:3 to 146:12).   Defendant, apparently, disputes the purpose of Hi-
   Tech's publication of the referenced press release by his arguments before this
   Court.**

22. At his deposition, Mr. Wheat testified as follows:

   Mr. Sullivan: Did you know Dr. Cohen's article was coming out before [the April 2, 2015
   press release] came out?

   Mr. Wheat: No.

   …

   Q: So what was the purpose of you submitting a press release, at this point, in April 2015,
   about Acacia rigidula extract?
        Why were you doing it then, as opposed to 2003, or 2012, after Dr. –

A: Well, I mean here, we have the increase in – the clinical studies have been done. You have hard data that you can then show what the results were. And you know, we were basically looking at starting to sell more of the raw material to people, or do contract manufacturing with the plan with different people.

I put out a dozen or more press releases a year.

…

Q: If I understand correctly, though, what you're saying is Exhibit 11 [April 2, 2015 press release], whatever the reasons were behind it, has nothing to do with the article that Dr. Cohen published –

A: No. Absolutely not.

Q: --five days later?

A: Absolutely not.

Exhibit 4, p. 145-147.

**Plaintiff's Response: Hi-Tech admits Fact 22 in so far as it accurately quotes the cited testimony, but denies it is probative of the point being urged by Defendant.**

23. On April 9, 2015, Hi-Tech issued a press release responding to Dr. Cohen's article, which states in part, and quoting Mr. Wheat:

   a.  "Hi-Tech Pharmaceuticals, a leading global manufacturer of dietary supplements and OTC Pharmaceuticals, today announced that it refuted the claims made by the Harvard led study by Pieter Cohen, the lead researcher and assistant professor at Harvard Medical School in his  Drug Testing and Analysis paper with full and robust response to every point raised in the article, including original test results by FDA and the results of retesting that was performed by Harvard on the product lots cited in the paper."

   b. "In Hi-Tech's chemists and overseas factories expert opinion, the allegations in the Harvard Research paper regarding the results of the 2013 testing for

13

[BMPEA] in acacia based products was not the product of reliable scientific principles and methods and therefore do not form a reliable basis for allegations of adulteration, or selling contaminated product as identified in the Harvard paper."

c.  "Hi-Tech Pharmaceuticals refutes the results from Harvard's researchers' paper, that such was not the product of reliable scientific principles and methods and therefore does not form a reliable basis for allegations of adulteration. We also will respond to other organizations maligning acacia just so they can commercialize it into a prescription drug and ban it from the dietary supplement industry as they did with ephedrine alkaloids."

See April 9, 2015 Press Release attached hereto as Exhibit 7.

**Plaintiff's Response: Hi-Tech admits Fact 23 to the extent that it accurately quotes Hi-Tech's press release. Hi-Tech further states that it was forced to publish a press release of this kind in response to Dr. Cohen's defamatory article and statements in an attempt to limit the damage wrought by Dr. Cohen on Hi-Tech's business. This press release highlights the falsity of Dr. Cohen's statements.**

24. On April 24, 2015, Hi-Tech Pharmaceuticals issued a press release which states in part:

a.  "Hi-Tech also believes the FDA is responding from pressure from outside sources like New York Senator Chuck Schumer and Dr. Cohen from Harvard. . . . The position of the FDA flies in the face of analytical testing and research done over the past 60 years on acacia species. Unprecedented findings of this nature usually

require a more in depth scientific study and additional scientific tools to confirm the accuracy of the findings."

    b. "Hi-Tech is determined to force FDA to follow the law and stop its 'Bullying Tactics'. If FDA is allowed to run amok and continue to 'Bully' ingredients that they do not like off the market, then the dietary supplement industry will cease to be able to give consumers ingredients they desire, such as DMAA and Acacia, that have been proven safe and effective."

See April 24, 2015 Press Release attached hereto as Exhibit 8.

**Plaintiff's Response: Hi-Tech admits Fact 24 to the extent that it accurately quotes Hi-Tech's press release. Hi-Tech further states that it was forced to publish a press release of this kind in response to Dr. Cohen's defamatory article and statements in an attempt to limit the damage wrought by Dr. Cohen on Hi-Tech's business. This press release highlights the falsity of Dr. Cohen's statements.**

25. At his deposition, Mr. Wheat testified that since 2011 he and/or Hi-Tech commissioned three studies on Hi-Tech's Fastin products, which were performed by Dr. Patrick Jacobs. Exhibit 4, pp. 59-61.

**Plaintiff's Response: Hi-Tech admits Fact 25 in so far as it accurately paraphrases the cited testimony, but denies it is probative of the point being urged by Defendant. On the contrary, this evidence supports the conclusion that Dr. Cohen's statements pertaining to BMPEA and Acacia rigidula and the absence of scientific studies thereupon were both defamatory and false.**

26. Mr. Wheat testified at his deposition that Dr. Jacobs was paid around $40,000 for the first study and lump sum of around $130,000 for the second and third study.

<u>Exhibit 4</u>, p. 62.

**Plaintiff's Response: Hi-Tech admits Fact 26 in so far as it accurately paraphrases the cited testimony, but denies it is probative of the point being urged by Defendant. This fact, moreover, is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so.**

27. At his deposition, Mr. Wheat testified as follows:

> Mr. Wheat: I mean, we are a pretty large advertiser.  I mean, we've spend tens of millions of dollars over the years in advertising, you know, various weight loss products.
>
> . . .
>
> Mr. Sullivan: Can you give me a rough estimate what portion of your advertising was dedicated to those Acacia rigidula products in 2015, for example, or 2014.
>
> A: In 2011, we started advertising quite a bit again. And I would say 80 percent of our advertising was on our fat burners, or weight-loss aides, that – you know, most of which contained Acacia rigidula."

<u>Exhibit 4</u>, pp. 68-69.

**Plaintiff's Response: Hi-Tech admits Fact 27 in so far as it accurately quotes the cited testimony, but denies it is probative of the point being urged by Defendant. Rather, it describes Hi-Tech's legitimate and typical business advertising practices, as well as the damage caused by Dr. Cohen's defamation of Hi-Tech and its products.**

28. At his deposition, Mr. Wheat testified that Hi-Tech's advertising budget in 2011 was between two and three million dollars.

<u>Exhibit 4</u>, p. 70.

**Plaintiff's Response: Hi-Tech admits Fact 28 in so far as it accurately quotes the cited testimony, but denies it is probative of the point being urged by Defendant.**

29. Stephen Smith, was the 30(b)(6) designee for the Plaintiff, and is executive vice-president of Hi-Tech Pharmaceuticals.

See 30(b)(6) Deposition attached hereto as Exhibit 9, p. 37.

**Plaintiff's Response: Hi-Tech admits Fact 29 to the extent that it accurately states who testified as Hi-Tech's 30(b)(6) designee. This fact, however, is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so.**

30. At his deposition, Mr. Smith testified that his estimate of Hi-Tech's gross sales in 2015 was approximately 50 million dollars.

Exhibit 9, p. 35.

**Plaintiff's Response: Hi-Tech admits Fact 30 in so far as that Mr. Smith so testified, and adds that this testimony was further clarified by the testimony of Jared Wheat, but denies it is probative of the point being urged by Defendant.**

31. At his deposition, Mr. Smith testified that, prior to publication of the Cohen Article, Dr. Cohen's article, Hi-Tech products labeled as containing *Acacia rigidula* comprised "at least half, if not, 65 percent of the revenue."

Exhibit 9, pp. 40-41.

**Plaintiff's Response: Hi-Tech admits Fact 31 in so far as that Mr. Smith so testified, and adds that this testimony was further clarified by the testimony of Jared Wheat, but denies it is probative of the point being urged by Defendant.**

32. At his deposition, Mr. Smith testified as follows:

> Mr. Sullivan: So it has always been—as the spokesperson for Hi-Tech, it has always been Hi-Tech's intent of the consumer to understand from the label that the product has Acacia rigidula in it which leads to the product containing the compound BMPEA.

> Mr. Smith: Yes.

> Exhibit 9, p. 43

**Plaintiff's Response: Hi-Tech admits Fact 32 in so far as that Mr. Smith so testified, and adds that this testimony was further clarified by the testimony of Jared Wheat, but denies it is probative of the point being urged by Defendant. Hi-Tech contends that these statements were defamatory, were false, and knowingly so. If anything, this testimony contradicts Defendant's defamatory statement that Hi-Tech is using the name Acacia rigidula "as a cover," (Dkt. #1 (Def, Ex. 4, par. 29)), Hi-Tech identified which of its products contain BMPEA on the label. *See* Flynn Opp. Cert. ¶5; Ex. C (Wheat Dep. 27:14-25).**

33. In its Complaint, Hi-Tech states that it has "an international reputation for excellence in the dietary supplement industry." Complaint, ¶ 1.

**Plaintiff's Response: Hi-Tech admits Fact 33 in so far as it accurately quotes the Complaint.**

34. In its Complaint, Hi-Tech states that it has "sold many millions of doses of dietary supplement products containing Acacia rigidula since 2004." Complaint, ¶ 20.

**Plaintiff's Response: Hi-Tech admits Fact 34 in so far as it accurately quotes the Complaint.**

35. Prior to publication of the Cohen Article, Dr. Cohen, consulted with Marcia Chapin, a Librarian at the Harvard Chemistry and Chemical Biology Library, regarding her opinion on the best way to locate relevant scientific literature mentioning BMPEA.

See Affidavit of Dr. Cohen attached hereto as Exhibit 10, ¶ 2; See also Deposition of Dr. Cohen attached hereto as Exhibit 11, p. 24.

**Plaintiff's Response: Hi-Tech denies Fact 35 as being based on incompetent and inadmissible hearsay. On a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial [but] inadmissible evidence may not be considered." *Facey v. Dickhaut*, 91 F. Supp. 3d 12, 19 (D. Mass. 2014); *citing Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993).**

36. Ms. Chapin recommended Dr. Cohen use SciFinder. Dr. Cohen understood SciFinder to be a comprehensive database that would allow him to search scientific literature in many languages for BMPEA, its chemical synonyms, and its chemical structure.

Exhibit 10, ¶ 3; Exhibit 11, p. 28; See Chapin email attached hereto as Exhibit 12.

**Plaintiff's Response: Hi-Tech denies Fact 36 as being based on incompetent and inadmissible hearsay. On a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial [but] inadmissible evidence may not be considered." *Facey v. Dickhaut*, 91 F. Supp. 3d 12, 19 (D. Mass. 2014); *citing Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993).**

37. Dr. Cohen understood SciFinder to include many peer-review publications that meet certain quality standards, other scientific literature, as well as patents.

Exhibit 10, ¶ 3.

**Plaintiff's Response: Hi-Tech admits that Defendant gave such testimony, but denies it is probative of the point being urged by Defendant in so far as it is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so.**

38. Prior to publication of the Cohen Article, Dr. Cohen asked Dr. Simon Brandt, an associate editor of Drug Testing and Analysis, to conduct a search on SciFinder for all materials that might mention BMPEA. Dr. Cohen wanted someone with extensive training in Chemistry to conduct the search. Dr. Cohen understood Dr. Brandt to be a PhD trained chemist with an appointment at Liverpool John Moores University.

Exhibit 10, ¶ 4.

**Plaintiff's Response: Hi-Tech admits that Defendant gave such testimony, but denies it is probative of the point being urged by Defendant. Moreover, this statement does not inform the Court as to whether Dr. Cohen actively ignored contrary research Dr. Cohen was aware of prior to publication of his defamatory article. *See e.g.* Flynn Opp. Cert. ¶4, Ex. A (Cohen Dep. 47:8 to 48:24; 59:16 to 62:11; 64:16 to 66:22; 116:14 to 118:21); Flynn Opp. Cert. ¶4, Ex. B (Exs. 3 and 4 to Cohen Dep.). Hi-Tech contends that the statements made by Dr. Cohen were defamatory, false, and knowingly so.**

39. As a result of his search, Dr. Brandt located approximately 580 article abstracts, which he provided to Dr. Cohen.

Exhibit 10, ¶ 5; See Brandt email attached hereto as Exhibit 13.

**Plaintiff's Response: Hi-Tech denies Fact 39 as being based on incompetent and inadmissible hearsay. On a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial [but] inadmissible evidence may not be considered." *Facey v. Dickhaut*, 91 F. Supp. 3d 12, 19 (D. Mass. 2014); *citing Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993).**

40. Prior to publication of the Cohen Article, Dr. Bastiaan Venhuis and Dr. Cohen reviewed the approximately 580 abstracts Dr. Brandt sent to Dr. Cohen.

Exhibit 10, ¶ 6.

**Plaintiff's Response: Hi-Tech denies Fact 40 as being based on incompetent and inadmissible hearsay. On a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial [but] inadmissible evidence may not be considered." *Facey v. Dickhaut*, 91 F. Supp. 3d 12, 19 (D. Mass. 2014); *citing Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993).**

41. Dr. Venhuis [is] a scientist at the Health Protection Center at the National Institute in Public Health and the Environment in the Netherlands and a PhD trained chemist.

Exhibit 10, ¶ 6.

**Plaintiff's Response: Hi-Tech admits that Defendant gave such testimony, but denies it is probative of the point being urged by Defendant. Moreover, it is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were**

**true/false, and the intention behind those statements. Hi-Tech contends that such statements were defamatory, were false, and knowingly so.**

42. Based on their review of the abstracts, if either Dr. Venhuis or Dr. Cohen determined the article might discuss the safety or efficacy of BMPEA or the presence of BMPEA in *Acacia rigidula*, Dr. Cohen and Dr. Venhuis would read the full article and obtain and review any relevant references.

    Exhibit 10, ¶ 7; Exhibit 11, p. 28.

    **Plaintiff's Response: Hi-Tech denies Fact 42 as being based on incompetent and inadmissible hearsay. On a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial [but] inadmissible evidence may not be considered." *Facey v. Dickhaut*, 91 F. Supp. 3d 12, 19 (D. Mass. 2014); *citing Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993).**

43. Prior to publication of the Cohen Article, Dr. Cohen consulted with Dr. Venhuis regarding various issues discussed in the Cohen Article, including the significance of the scientific literature, whether the biologics effects of BMPEA have been studied in humans, whether BMPEA may be unsafe, and whether the scientific literature indicates that BMPEA is found in *Acacia rigidula*.

    Exhibit 10, ¶ 8.

    **Plaintiff's Response: Hi-Tech denies Fact 43 as being based on incompetent and inadmissible hearsay. On a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial [but] inadmissible evidence may not be considered." *Facey v. Dickhaut*, 91 F. Supp. 3d 12, 19 (D. Mass. 2014); *citing Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993).**

44. Prior to publication of the Cohen Article, Dr. Cohen also reviewed relevant references from the FDA Article, including but not limited to Beverly Clement's 1998 Article entitled: Toxic Amines And Alkaloids From Acacia Rigidula, (Vol. 49 Phytochemistry 1377-80 (1998)). Dr. Cohen also reviewed all relevant references from Dr. Clement's article.

Exhibit 1, ¶ 9.

**Plaintiff's Response: Hi-Tech admits that Defendant gave such testimony, but denies it is probative of the point being urged by Defendant. Moreover, this statement does not inform the Court as to whether Dr. Cohen actively ignored contrary research Dr. Cohen was aware of prior to publication of his defamatory article. *See e.g.* Flynn Opp. Cert. ¶4, Ex. A (Cohen Dep. 47:8 to 48:24; 59:16 to 62:11; 64:16 to 66:22; 116:14 to 118:21); Flynn Opp. Cert. ¶4, Ex. B (Exs. 3 and 4 to Cohen Dep.). Hi-Tech also disputes that Dr. Cohen conducted adequate, thorough or reasonable research prior to the publication of his defamatory article. Hi-Tech contends that the statements**

45. Prior to publication of the Cohen Article, Dr. Cohen consulted with John Travis, a Senior Research Scientist at NSF International, regarding whether the peer review literature indicates that BMPEA has been found in *Acacia rigidula*. Mr. Travis informed Dr. Cohen that after his review of approximately 557 abstracts, he did not find any literature indicating that BMPEA is found in *Acacia rigidula*, or any plant.

Exhibit 10, ¶ 11; See Travis email attached hereto as Exhibit 14.

**Plaintiff's Response: Hi-Tech denies Fact 45 as being based on incompetent and inadmissible hearsay. On a motion for summary judgment, "a court may take into**

account any material that would be admissible or usable at trial [but] inadmissible evidence may not be considered.*" Facey v. Dickhaut*, **91 F. Supp. 3d 12, 19 (D. Mass. 2014);** *citing Horta v. Sullivan*, **4 F.3d 2, 8 (1st Cir. 1993).**

46. Prior to publication of the Cohen Article, Dr. Cohen consulted with Rahul Pawar, an author of the January 25, 2014 FDA Article.

Exhibit 10, ¶ 12; See Pawar email attached hereto as Exhibit 15.

**Plaintiff's Response: Hi-Tech denies Fact 46 as being based on incompetent and inadmissible hearsay. On a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial [but] inadmissible evidence may not be considered.*" Facey v. Dickhaut*, 91 F. Supp. 3d 12, 19 (D. Mass. 2014);** *citing Horta v. Sullivan*, **4 F.3d 2, 8 (1st Cir. 1993).**

47. Prior to publication of the Cohen Article, Dr. Cohen consulted with his co-author Dr. Roy Gerona regarding various issues related to the article, including the meaning and significance of the scientific literature, including but not limited to whether the effects of BMPEA have been studied in humans, whether BMPEA may be unsafe, and whether the scientific literature indicates that BMPEA is found in *Acacia rigidula*.

Exhibit 10, ¶13.

**Plaintiff's Response: Hi-Tech denies Fact 47 as being based on incompetent and inadmissible hearsay. On a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial [but] inadmissible evidence may not be considered.*" Facey v. Dickhaut*, 91 F. Supp. 3d 12, 19 (D. Mass. 2014);** *citing Horta v. Sullivan*, **4 F.3d 2, 8 (1st Cir. 1993).**

48. Dr. Gerona [is] a PhD trained chemist with an appointment at the University of California at San Francisco.

Exhibit 10, ¶ 13.

**Plaintiff's Response: Hi-Tech admits that Defendant gave such testimony, but denies it is probative of the point being urged by Defendant. Moreover, it is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so.**

49. At his deposition, Dr. Cohen testified as follows:

Mr. Flynn: Did you see anything in the literature review that you did that commented on the differences between the physiology of dogs, cats, rats, or any of the other animals that were studied and humans with regard to the physiological impacts of BMPEA?

Dr. Cohen: That was essential to my discussions with Bastiaan and Roy.

Q: When you say it was central or essential to your discussions, what do you mean by that?

A: I mean their training is just in part understanding that, what might be relevant to humans, what might not be relevant to humans. So they take that into consideration.

Q: So the statements in [the Cohen Article] that concerns are raised because of the physiological effects that are seen in certain animals of the ingestion of BMPEA, are you saying that you depended on Bastiaan and Roy Gerona for those conclusions and simply adopted them?

A: I relied on the experts for those positions, yes.

Exhibit 11, pp. 72-73.

**Plaintiff's Response: Hi-Tech admits Fact 49 in so far as it accurately quotes the cited testimony, but denies it is probative of the point being urged by Defendant. To the contrary, this testimony highlights that Dr. Cohen picked and chose what science he would rely upon and how to portray it depending upon how it fit into his biased and defamatory agenda – shutting down Hi-Tech and the dietary supplement industry.** *See* **Flynn PSJ Cert. ¶¶ 8 and 9, Exs. E and F.**

50. Prior to publication of the Cohen Article, Dr. Cohen consulted with Hallam Gugelmann, M.D., MPH, a Medical Toxicology Fellow at the University of California at San Francisco who worked at the Northern California Poison Control Center. Dr. Gugelmann reviewed data from California poison control charts from 2010 through 2013, and reported 53 exposure calls involving the ingestion of supplements which in 2014 were labeled as containing *Acacia rigidula*. Dr. Gugelmann reported that 25 of these calls were symptomatic and 25 were from emergency departments.

Exhibit 10, ¶ 14; See Gugelmann email attached hereto as Exhibit 16.

**Plaintiff's Response: Hi-Tech denies Fact 50 as being based on incompetent and inadmissible hearsay. On a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial [but] inadmissible evidence may not be considered.***" Facey v. Dickhaut***, 91 F. Supp. 3d 12, 19 (D. Mass. 2014);** *citing Horta v. Sullivan***, 4 F.3d 2, 8 (1st Cir. 1993).**

51. Prior to publication of the Cohen Article, Dr. Gugelmann told Dr. Cohen that he thought the number of calls to California poison control centers from 2010 through 2013 involving the ingestion of supplements which in 2014 were labeled as containing A*cacia rigidula* were concerning.

Exhibit 10, ¶ 15.

**Plaintiff's Response: Hi-Tech denies Fact 51 as being based on incompetent and inadmissible hearsay. On a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial [but] inadmissible evidence may not be considered." *Facey v. Dickhaut*, 91 F. Supp. 3d 12, 19 (D. Mass. 2014); *citing Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993).**

52. Prior to publication of the Cohen Article, Dr. Cohen was involved in investigating a case, along with one of the patient's physicians and other physicians and experts, involving a patient's hemorrhagic stroke and its possible relationship to exercise combined with the use of a sports supplement containing BMPEA .

Exhibit 10, ¶ 16.

**Plaintiff's Response: Hi-Tech admits that Defendant gave such testimony, but denies it is probative of the point being urged by Defendant. Moreover, it is immaterial to the determination of whether the statements made in the defamatory Cohen article or thereafter by Dr. Cohen were defamatory, and whether those statements were true/false, and the intention behind those statements. Hi-Tech contends that these statements were defamatory, were false, and knowingly so.**

53. Dr. Cohen's statements indicating that BMPEA is not found in *Acacia rigidula* were based on:

    a. His and Dr. Venhuis' review of approximately 580 abstracts for scientific articles that might mention BMPEA, which were located, following the advice of a librarian at the Harvard Chemistry and Chemical Biology Library, through a SciFinder search, that was conducted by Dr. Simon Brandt;

b.  His and Dr. Venhuis' review of the full articles related to abstracts which indicated that the article potentially discussed the safety or efficacy of BMPEA or the presence of BMPEA in *Acacia rigidula*;

c.  His and Dr. Venhuis' review of relevant references identified in the full articles they reviewed;

d.  His review of the FDA Article, including but not limited to its statement that "[β-methylphenethylamine ("BMPEA")] was not found in any of the authenticated samples of *A. rigidula* that we analyzed. Additionally, we did not find any literature describing its presence in any other botanical."

e.  His review of the relevant references in the FDA article, including but not limited to Beverly Clement's 1998 Article entitled: <u>Toxic Amines And Alkaloids From Acacia Rigidula</u>, (Vol. 49 Phytochemistry 1377-80 (1998)), and his review of relevant references from Dr. Clement's article;

f.  Statements from John Travis regarding his interpretation of the scientific literature; and

g.  Discussions with Dr. Venhuis and Dr. Gerona regarding the meaning and interpretation of the reviewed literature.

<u>Exhibit 10</u>, ¶ 17.

**Plaintiff's Response: Hi-Tech admits that Defendant gave such testimony, but denies it is probative of the point being urged by Defendant, and states that Defendant actively ignored any evidence that came to a conclusion opposing his agenda, and evidencing that BMPEA can, in fact, be found in Acacia rigidula plants.** *See e.g.* **Flynn Opp. Cert. ¶4; Ex. A (Cohen Dep. 116:14 to 118:21).**

54. Dr. Cohen's statements indicating that the biological effects of BMPEA have not been studied in humans were based on:

    a.  His and Dr. Venhuis' review of approximately 580 abstracts for scientific articles that might mention BMPEA, which were located, following the advice of a librarian at the Harvard Chemistry and Chemical Biology Library, through a SciFinder search, that was conducted by Dr. Simon Brandt;

    b.  His and Dr. Venhuis' review of the full articles related to abstracts which indicated that the article potentially discussed the safety or efficacy of BMPEA or the presence of BMPEA in *Acacia rigidula*;

    c.  His and Dr. Venhuis' review of relevant references identified in the full articles reviewed;

    d.  His review of the FDA Article, including but not limited to its statement that "[W]e have not found documentation of human data on the safety or biological effects or possible interactions of [BMPEA];"

    e.  Feedback he received from the peer-review publication process; and

    f.  Discussions with Dr. Venhuis and Dr. Gerona regarding the meaning and interpretation of the reviewed literature.

Exhibit 10, ¶ 18.

**Plaintiff's Response: Hi-Tech admits that Defendant gave such testimony, but denies it is probative of the point being urged by Defendant, and states that Defendant actively ignored any evidence that came to a conclusion opposing his agenda, and evidencing that BMPEA has, in fact, been studied in humans.** *See e.g.* **Flynn Opp. Cert. ¶4, Ex. A (Cohen Dep. 64:16 to 66:22).**

55. Dr. Cohen's statements indicating that BMPEA and supplements labeled as containing *Acacia rigidula* may be unsafe were based on:

    a.  His and Dr. Venhuis' review of approximately 580 abstracts for scientific articles that might mention BMPEA, which were located, following the advice of a librarian at the Harvard Chemistry and Chemical Biology Library, through a SciFinder search, that was conducted by Dr. Simon Brandt;

    b.  His and Dr. Venhuis' review of the full articles related to abstracts which indicated that the article potentially discussed the safety or efficacy of BMPEA or the presence of BMPEA in *Acacia rigidula*;

    c.  His and Dr. Venhuis' review of relevant references identified in the full articles reviewed;

    d.  His review of the FDA Article, including but not limited to its statements that "[β-methylphenethylamine ("BMPEA")] was not found in any of the authenticated samples of *A. rigidula* that we analyzed. Additionally, we did not find any literature describing its presence in any other botanical," and the FDA's statement that "[W]e have not found documentation of human data on the safety or biological effects or possible interactions of [BMPEA]."

    e.  His review of the relevant references in the FDA Article;

    f.  Poison control data provided by Dr. Gugelmann;

    g.  Dr. Gugelmann's interpretation of the poison control data;

    h.  An investigation conducted by Dr. Cohen and other physicians and experts, involving a patient's hemorrhagic stroke and its possible relationship to exercise combined with the use of a sports supplement containing BMPEA;

i. Feedback Dr. Cohen received from the peer-review publication process; and

j. Discussions with Dr. Venhuis and Dr. Gerona regarding the meaning and interpretation of the reviewed literature.

Exhibit 10, ¶ 19.

**Plaintiff's Response: Hi-Tech admits that Defendant gave such testimony, but denies it is probative of the point being urged by Defendant, and states that Defendant actively ignored any evidence that came to a conclusion opposing his agenda. *See e.g.* Flynn Opp. Cert. ¶4, Ex. A (Cohen Dep. 47:8 to 48:24; 59:16 to 62:11; 64:16 to 66:22; 116:14 to 118:21); Flynn Opp. Cert. ¶4, Ex. B (Exs. 3 and 4 to Cohen Dep.).**

56. The Cohen Article and Dr. Cohen's statements to the media were based on:

a. His and Dr. Venhuis' review of approximately 580 abstracts for scientific articles that might mention BMPEA, which were located, following the advice of a librarian at the Harvard Chemistry and Chemical Biology Library, through a SciFinder search, that was conducted by Dr. Simon Brandt;

b. His and Dr. Venhuis' review of the full articles related to abstracts which indicated that the article potentially discussed the safety or efficacy of BMPEA or the presence of BMPEA in *Acacia rigidula*;

c. His and Dr. Venhuis' review of relevant references identified in the full articles reviewed;

d. His review of the FDA Article, including but not limited to its statements that "[BMPEA] was not found in any of the authenticated samples of *A. rigidula* that we analyzed. Additionally, we did not find any literature describing its presence

in any other botanical," and the FDA's statement that "[W]e have not found documentation of human data on the safety or biological effects or possible interactions of [BMPEA]."

e. His review of the relevant references in the FDA article, including but not limited to Beverly Clement's 1998 Article entitled: <u>Toxic Amines And Alkaloids From Acacia Rigidula</u>, (Vol. 49 Phytochemistry 1377-80 (1998)), and his review of relevant references from Dr. Clement's article;

f. Statements from John Travis regarding his interpretation of the scientific literature;

g. Poison control data provided by Dr. Gugelmann;

h. Dr. Gugelmann's interpretation of the poison control data;

i. An investigation conducted by Dr. Cohen and other physicians and experts, involving a patient's hemorrhagic stroke and its possible relationship to exercise combined with the use of a sports supplement containing BMPEA; and

j. Discussions with Dr. Venhuis and Dr. Gerona regarding the meaning and of the reviewed literature.

<u>Exhibit 10</u>, ¶ 20.

**Plaintiff's Response: Hi-Tech admits that Defendant gave such testimony, but denies it is probative of the point being urged by Defendant, and states that Defendant gave contradictory testimony wherein he stated that he gave less accurate and comprehensive statements to the media, straying from his article and the sources it purportedly relied upon. *See e.g.* Flynn PSJ Cert. ¶4, Ex. A (Cohen Dep. 45:17 to 46:7; 55:20 to 57:1).**

## PLAINTIFF'S AFFIRMATIVE STATEMENT OF ADDITIONAL
## DISPUTED MATERIAL FACTS

57. Despite having sold many millions of doses of dietary supplement products containing Acacia rigidula since 2004, Hi-Tech is unaware of any report of serious illness, injury, or death from any consumer of its Acacia rigidula products.  Flynn Opp. Cert ¶ 6, Ex. D (Wheat Decl. ¶16).

58. Acacia rigidula is a species of shrub or small tree in the legume family, *Fabaceae*.  Flynn PSJ Cert. ¶10, Ex. G.

59. Acacia rigidula's native range stretches from Texas in the United States south to central Mexico.  Flynn PSJ Cert. ¶10, Ex. G.

60. Acacia rigidula has been used in traditional medicine by Native Americans for many years to treat a variety of ailments.  Flynn PSJ Cert. ¶10, Ex. G.

61. Acacia rigidula contains about 40 different chemical compounds and amines and has become famous for its promotion of weight loss and energy and its ability to elevate mood and metabolic rate.  Flynn PSJ Cert. ¶10, Ex. G.

62. Among the many compounds is naturally occurring beta-methylphenylethylamine (BMPEA), which is a phenylethylamine alkaloid.  Flynn PSJ Cert. ¶10, Ex. G.

63. Hi-Tech developed a proprietary process to produce an extract from the Acacia rigidula plant (raw materials) which contains BMPEA *as well as* other ingredients.  Flynn Opp. Cert ¶ 6, Ex. D (Wheat Decl. ¶10); Flynn Opp. Cert ¶ 5, Ex. C (Wheat Dep. 163:1-25).

64. It is false to say that studies pertaining to Acacia rigidula, BMPEA and humans do not exist or have never been performed because such studies have occurred and been performed, as evidenced in the following and other publications:

- Jacobs, *The Acute Physiological Effects of Acacia Rigidula;*
- Jacobs, *The Acute Metabolic, Hemodynamic, and Psychological Effects of Fastin®-XR, A Commercial Weight Loss Product;*
- Jacobs, *The Acute Physiological and Psychological Effects of Fastin®-RR, A Commercial Weight Loss Product;*
- Jacobs, *The Effects of Fastin®-RR, A Commercial Weight Loss Product, on Body Weight and Body Composition in Persons Participating in a Weight Loss Program.*
- Rashti, et al., *Thermogenic effect of meltdown RTD energy drink in young healthy women: a double blind, cross over design study,* Lipids in Health and Disease (December 17, 2009);
- Bloomer, et al., *Effect of the dietary supplement Meltdown on catecholamine secretion, markers of lipolysis, and metabolic rate in men and women: a randomized placebo controlled, cross-over study,* Lipids in Health and Disease (August 5, 2009);
- Hoffman, et al., *Thermogenic effect of an acute ingestion of a weight loss supplement,* Journal of the International Society of Sports Nutrition (January 6, 2009);
- Bloomer, et al., *Dietary supplement increases plasma norepinephrine, lipolysis, and metabolic rate in resistance trained men,* Journal of the International Society of Sports Nutrition (January 28, 2009);
- Jitomir, et al., *The acute effects of the thermogenic supplement Meltdown on energy expenditure, fat oxidation, and hemodynamic responses in young, healthy males,* Journal of the International Society of Sports Nutrition (December 16, 2008).
- Chun and Gao, *synergistic interactions between Acacia Rigidula, and Caffeine (A+C stack): A Multi-Purpose study,* Chemycos Technology Ltd. (June-September 2005);
- Chun and Gao, *An herbal combination-YCAX stack-containing Yohimbine, Citrus aurantium, Acacia rigidula, and Xanthines for weight loss: a randomized, double-blind trial,* Chemycos Technology Ltd. (October-December 2004).

Collectively, the "Studies Of BMPEA And Humans."  Flynn PSJ Cert ¶ 10, Ex. G (Heuer Decl. ¶6b).

65. It is false to say that BMPEA cannot be found naturally occurring in Acacia rigidula because such extraction has been documented in Acacia rigidula and closely related plants, as evidenced in the following and other articles and publications:

- Clement, *Toxic Amines And Alkaloids From Acacia Rigidula,* Vol. 49 Phytochemistry 1377-80 (1998);

- Camp and Norvell, *The Phenylethlamine Alkaloids of Native Range Plants*, Vol. 20 Economic Botany 274-78 (July-Sep. 1966).
- Windels, et al., *Effects of aeration on phenolic amine content of guajillo,* Vol. 56 Journal of Range Management 529-33 (2003);
- Forbes, et al., *Seasonal variation of two phenolic amines in Acacia berlandieri,* Vol. 30 Journal of Arid Environments 403-15 (1994);
- Pemberton, et al., *Technical Note: An Improved Method for Extraction and Quantification of Toxic Phenethylamines from Acacia berlandieri*, Vol. 71 Journal of Animal Science 467-70 (1993);
- Adams and Camp, *The Isolation And Identification Of Three Alkaloids From Acacia Berlandieri,* Vol. 4 Taxicom 85-90 (1966);
- Camp and Moore, *A Quantitative Method for the Alkaloid of Acacia berlandieri,* Vol. 49 J. of the Amer. Pharm. Assoc. 158-60 (1960).
- Fitzgerald, *Alkaloids Of The Australian Leguminosae,* Vol. 17 Aust. J. Chem. 160-62 (1964);
- White, *Examination of Further Legumes, Mainly Lupinos And Acacia Species For Alkaloids,* Vol. 38B New Zealand J. of. Sci. & Tech. 718-25 (1957); and
- White, *Alkaloids Of The Leguminosae,* Vol. 35B New Zealand J. of Sci & Tech 451-55 (1954).

Collectively the "Studies Of BMPEA Extraction."  Flynn PSJ Cert ¶ 10, Ex. G (Heuer Decl. ¶6a).

66. It is false to say that Hi-Tech's products listed in the *Drug Testing* Article do not have the plant Acacia rigidula in them at all because they do contain Acacia rigidula.  Flynn PSJ Cert. ¶5; Flynn Opp. Cert ¶ 6, Ex. D (Wheat Decl. ¶11).

67. It is also false in that BMPEA is neither a new stimulant nor a designer stimulant.  Flynn PSJ Cert ¶ 10, Ex. G (Heuer Decl. ¶6).

68. It is false to say that there is not a single weight loss supplement on the market that is legal because Hi-Tech's supplements are legally marketed.  Flynn Opp. Cert ¶ 6, Ex. D (Wheat Decl. ¶12).

69. "Before publication," Dr. Cohen was "made aware of additional research" concerning Acacia rigidula in BMPEA beyond that he had located during his earlier literature review.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 25:7 to 27:8).

70. Dr. Cohen "flipped through" the document containing that additional research, as he stated.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 26:15 to 27:8).

71. Dr. Cohen did not see an indication of publication in a peer reviewed journal when he "flipped through" the document.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 26:15 to 27:8).

72. Dr. Cohen "didn't read it any further" after failing to find an indication of publication in a peer reviewed journal.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 26:15 to 27:8).

73. Dr. Cohen relied in the *Drug Testing* Article on information found in other than peer-reviewed journals.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 27:9 to 29:3).

74. Dr. Cohen admitted making at least one unsubstantiated statement of fact in the *Drug Testing* Article.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 29:18 to 31:16).

75. Dr. Cohen also admitted to relying upon and quoting materials from drug supplement companies in the *Drug Testing* Article.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 36:6-10).

76. Dr. Cohen did not attempt, beyond flipping through a single document, to determine the source of the additional BMPEA and Acacia rigidula related materials that he became aware of prior to publication of the *Drug Testing* Article.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 26:15 to 27:8).

77. Dr. Cohen admits that there is "a lot of controversy" about what constitutes a "synthetic stimulant" and "different experts could have different opinions about how to define synthetic stimulants," as he put it.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 38:15 - 22).

78. Dr. Cohen stated that "talking to the media" involves "just having a conversation" where there is no process requiring that "every word is really accurate."  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 45:17 to 46:20).

79. Dr. Cohen does not consider himself an expert concerning what is or is not a "designer stimulant."  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 49:15-21).

80. Dr. Cohen considers himself "agnostic" about the "correct description" of "designer stimulant" among expert chemists.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 49:22 to 50:4; 56:12 to 57:1).

81. Dr. Cohen nevertheless believes that when talking to the media he can use that phrase -- "designer stimulant" -- as an accurate description "in common parlance" of BMPEA.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 49:22 to 50:4; 56:12 to 57:1).

82. Dr. Cohen contends that it is an accurate description even with express reference to the multiplicity of scientific opinion or opinions on that score.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 49:15 to 57:1).

83. Dr. Cohen does not know whether BMPEA is a designer stimulant or not.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 49:15 to 57:1).

84. Dr. Cohen stated that there is "zero evidence" that Dr. Cohen is aware of that BMPEA has been extracted from Acacia rigidula.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 53:18-21).

85. Dr. Cohen understands that there is no need to demonstrate efficacy for any dietary supplement sold in the United States.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 57:7 to 58:18).

86. Dr. Cohen has never filed, nor knowingly participated in the filings or pursuit of, a citizen's petition to the FDA concerning BMPEA on Acacia rigidula.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 79:4 to 81:7).

87. Dr. Cohen recommended avoiding even those supplements labeled or containing Acacia rigidula that the *Drug Testing* Articles stated contained no BMPEA.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 99:5-14; 112:1 to 115:23).

88. In the *CBS This Morning Interview*, Dr. Cohen never stated expressly that his statements were matter of opinion and interpretation rather than of fact.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 119:7-17).

89. Dr. Cohen admits in the *Drug Testing* Article that "the health effects of BMPEA are not that known."  Dkt. Entry #14 (Def. Ex. 4 at 331).

90. After Dr. Cohen's *Drug Testing* Article was published, the following businesses stopped ordering any product from Hi-Tech:  GNC, Rite Aid, and Kinney Drugs. Flynn Opp. Cert ¶6; Ex. D (Wheat Decl. ¶5-8); Flynn Opp. Cert ¶5; Ex. C (Wheat Dep. 29:23 to 31:1).

91. GNC, Rite Aid, Kinney Drugs, Lone Star, Gaspari Nutrition and Vitacost stopped ordering products from Hi-Tech because of the Cohen *Drug Testing* Article and related statements by Dr. Cohen.   Flynn Opp. Cert ¶6; Ex. D (Wheat Decl. ¶5-8); Flynn Opp. Cert ¶5; Ex. C (Wheat Dep. 29:23 to 31:1).

92. Dr. Cohen's statements set forth above have caused and will continue to cause damage to Hi-Tech's consumer sales, brands, sales in the raw material and contract manufacturing divisions and loss of reputation and goodwill with regulatory authorities, vendors, business partners and customers.  Flynn Opp. Cert ¶6; Ex. D (Wheat Decl. ¶5-8).

93. At least seven (7) days prior to the filing of this action, Dr. Cohen was informed that his communications regarding the subject matter herein were false and defamatory and was requested to retract his statements.  Flynn Opp. Cert ¶6; Ex. D (Wheat Decl. ¶14).

94. Dr. Cohen disregarded and ignored the requested retraction.  Flynn Opp. Cert ¶6; Ex. D (Wheat Decl. ¶15).

95. Prior to the publication of the false and defamatory statements, Defendant knew or should have known of studies demonstrating the natural presence of b-methylphenylethylamine, a phenylethylamine alkaloid, in Acacia rigidula and other Acacia species.  Flynn Opp. Cert ¶ 4, Ex. A (Cohen Dep. 25:7 to 27:8); Flynn PSJ Cert. ¶ 10, Ex. G.

96. As a result of Defendant's numerous statements and comments, Hi-Tech has lost customers and/or continues to lose customers, a substantial portion of its revenue, and a decrease in sales through contract manufacturing and providing Acacia rigidula as a raw material.   Flynn Opp. Cert ¶6; Ex. D (Wheat Decl. ¶5-8).

97. In the first year after the Cohen article and media tour, this alone amounted to at least $2.3 million in lost sales.  Flynn Opp. Cert ¶6; Ex. D (Wheat Decl. ¶5-8).

98. Further damages accrued as a result of the Cohen statements since, even with existing customers, expensive changes and concessions were necessary to keep others as customers.  Flynn Opp. Cert ¶6; Ex. D (Wheat Decl. ¶5-8).

Respectfully Submitted,
EPSTEIN BECKER & GREEN, P.C.


/s/ James P. Flynn_____
James P. Flynn
*Admitted pro hac vice*
*Attorneys for Plaintiff*

DATED: September 26, 2016

## CERTIFICATE OF SERVICE

I, James P. Flynn, Esquire, attorney for Plaintiff, hereby certify that on this day, September 26, 2016, I served a copy of the Plaintiff's Response to Defendant, Pieter A. Cohen's, Statement of Facts in Support of His Motion For Summary Judgment upon all parties, by electronically filing to all ECF registered parties and by sending a copy, first class mail, postage prepaid to all unregistered parties.

/s/ James P. Flynn_____
James P. Flynn
*Admitted pro hac vice*