UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
HI-TECH PHARMACEUTICALS, INC.,         )
                                       )
                    Plaintiff,         )
                                       )          CIVIL ACTION
            v.                         )          NO. 16-10660-WGY
                                       )
PIETER A. COHEN,                       )
                                       )
                    Defendant.         )
_____)

**MEMORANDUM OF DECISION**

YOUNG, D.J.                                      October 28, 2016

## I.    INTRODUCTION

This action involves claims by Hi-Tech Pharmaceuticals,
Inc. ("Hi-Tech") against Pieter A. Cohen ("Cohen") for libel,
slander, product disparagement, and violation of Massachusetts
General Laws, chapter 93A ("chapter 93A").  Hi-Tech's claims
arise out of statements Cohen made in an article and in media
appearances in connection therewith concerning an ingredient in
particular nutritional supplements manufactured and distributed
by Hi-Tech.  After the Court denied Cohen's motions to dismiss
the action, the parties cross-moved for summary judgment, with
Cohen requesting judgment as matter of law on all claims and Hi-
Tech seeking partial summary judgment.  On October 5, 2016, the
Court entered an order granting in part and denying in part

Cohen's motion, and denying Hi-Tech's motion.  It now explains its reasoning for doing so.

A.    **Factual Background**

Hi-Tech is a pharmaceutical company that manufactures, distributes, and sells dietary supplements.  Pl.'s Statement Undisputed Material Facts Pursuant Local Civil Rule 56.1 ("Pl.'s Statement Facts") ¶ 1, ECF No. 70.  Cohen, an internist and professor of medicine, id. ¶ 2, is the first author of an article entitled "An amphetamine isomer whose efficacy and safety in humans has never been studied, β-methylphenylethylamine (BMPEA), is found in multiple dietary supplements" (the "Article"), id. ¶ 7; Def., Pieter A. Cohen's, Statement Facts Supp. Mot. Summ. J. ("Def.'s Statement Facts") ¶ 5, ECF No. 61.  The Article was published in Drug Testing and Analysis, a peer-reviewed journal, in April 2015.  Def.'s Statement Facts ¶ 5; Pl.'s Statement Facts ¶ 7.  It identifies six Hi-Tech supplements whose labels indicate that they contain "Acacia rigidula" and reports that those supplements contain a synthetic substance called BMPEA, even though, according to the Article, "there is no scientific evidence that BMPEA has ever been extracted from Acacia rigidula[,]" Def.'s Mem. Supp. Special Mot. Dismiss Pl.s' Compl. Pursuant Mass. Gen. Laws ch. 231, § 59H, Ex. 2 ("Article") 5, ECF No. 14-2.  The Article goes on to state that "BMPEA's effect on human health is entirely

unknown" and that it "is not a legitimate supplement
ingredient."  Article 6.  Cohen stated that his conclusions were
based on his review of various scientific articles and
discussions with scientists, Def.'s Statement Facts ¶¶ 53-54,
though the precise scope of Cohen's research and the sources of
which he was aware at the time of publication are disputed, see
Pl.'s Resp. Def. Pieter A. Cohen's Statement Facts Supp. Mot.
Summ. J. ¶¶ 53-54, ECF No. 68; Def.'s Resp. Pl.'s Statement
Material Facts Pursuant Local Civil Rule 56.1, Supp. Pl.'s Mot.
Partial Summ. J. ¶ 36, ECF No. 72.

The Article calls on the Food and Drug Administration
("FDA") to ensure supplements containing BMPEA are pulled from
the market and urges manufacturers to recall, and consumers to
avoid, BMPEA-containing products.  Def.'s Statement Facts ¶¶ 9-
10; Article 6.  Following the publication of the Article, Cohen
spoke about supplements containing BMPEA in various media
appearances, Pl.'s Statement Facts ¶¶ 9-11, stating, inter alia,
that various supplements purportedly containing Acacia rigidula
instead contain an untested "designer stimulant called BMPEA"
that "is in a sense, being tested on buyers," id. ¶ 11.

Hi-Tech issued a press release refuting Cohen's
contentions.  Def.'s Statement Facts ¶ 23.  Upon receiving a
letter from the FDA stating that Hi-Tech's labeling of its
BMPEA-containing products is in violation of federal law and

requesting that it take appropriate action, id. ¶ 20, Hi-Tech issued an additional press release objecting to the FDA's letter, id. ¶ 21.

Hi-Tech claims that it has suffered economic harm as a result of Cohen's statements, which it maintains are false, in the form of lost customers, revenue, and sales contracts.  Pl.'s Statement Facts ¶ 37.

### B.   Procedural History

Hi-Tech initiated this action on April 5, 2016.  Compl., ECF No. 1.  Cohen filed a timely motion to dismiss for failure to state a claim, Def., Pieter A. Cohen's, Mot. Dismiss Compl., ECF No. 15, as well as a special motion to dismiss pursuant to the Massachusetts "anti-SLAPP"[1] statute, Mass. Gen. Laws chapter 23, § 59H, Def.'s Special Mot. Dismiss Pl.'s Compl. Pursuant Mass. Gen. Laws ch. 231, § 59H, ECF No. 13.  The Court denied these motions from the bench.  Elec. Clerk's Notes, ECF No. 40. The parties submitted further briefing on the anti-SLAPP issue, Def.'s Suppl. Br. Regarding Seventh Amendment Right Jury Trial and Mass. Gen. Laws ch. 231, § 59H ("Def.'s Suppl. Mem."), ECF No. 47; Pl.'s Mem. Opp'n Def.'s Mot. Reconsider, ECF No. 48, with Cohen requesting that this Court revise its earlier order denying Cohen's special motion to dismiss, Def.'s Suppl. Mem. 1.

---

[1] "SLAPP" stands for "strategic lawsuit against public participation."  See Mass. Gen. Laws ch. 23, § 59H.

The Court declined to alter its ruling and issued a memorandum of decision setting forth its analysis of the anti-SLAPP issue.[2] Elec. Clerk's Notes, ECF No. 64; Mem. Decision, ECF No. 66.

The parties filed cross-motions for summary judgment on September 9, 2016. Pl.'s Mot. Partial Summ. J., ECF No. 56; Def.'s, Pieter A. Cohen, M.D., Mot. Summ. J., ECF No. 59. Cohen sought summary judgment on each of Hi-Tech's claims, Mem. Def., Pieter A. Cohen, Supp. Mot. Summ. J. ("Def.'s Mem.") 1, ECF No. 60, while Hi-Tech requested judgment as matter of law on a single issue, Br. Supp. Pl. Hi-Tech's Mot. Partial Summ. J. ("Pl.'s Mem.") 1, ECF No. 57. The Court heard arguments on the parties' summary judgment motions on September 29, 2016. Elec. Clerk's Notes, ECF No. 81. On October 5, 2016, the Court entered an order granting in part and denying in part Cohen's motion -- specifically, the Court granted the motion as to Hi-Tech's product disparagement and chapter 93A claims and denied it as to Hi-Tech's defamation claim (but limited Hi-Tech's recovery on that claim to special damages) -- and denied Hi-

---

[2] Of particular concern to the Court was whether enforcement of the anti-SLAPP statute in federal court might infringe on the parties' Seventh Amendment right to a jury trial. <u>See generally</u> Mem. Decision, ECF No. 66. For a discussion of other issues relevant to the application of anti-SLAPP statutes in federal court, see Yando Peralta, <u>State Anti-SLAPPS and</u> Erie: Murky, But <u>Not Chilling</u>, 26 Fordham Intell. Prop. Media & Ent. L.J. 769 (2016); Colin Quinlan, Erie <u>and the First Amendment: State Anti-SLAPP Laws in Federal Court After</u> Shady Grove, 114 Colum. L. Rev. 367 (2014).

Tech's motion.  Order, ECF No. 88.  A jury trial on the
surviving claims for libel and slander[3] commenced on October 24,
2016.  Elec. Clerk's Notes, ECF No. 99.

## II.  ANALYSIS

Summary judgment is proper "[w]hen the facts, so
marshalled, show 'that there is no genuine issue as to any
material fact and that the moving party is entitled to a
judgment as a matter of law[.]'"  Mandel v. Boston Phoenix,
Inc., 456 F.3d 198, 205 (1st Cir. 2006) (quoting Fed. R. Civ. P.
56(c)).  The movant bears the burden of proving "an absence of
evidence to support the nonmoving party's case."  Clifford v.
Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (citing Celotex
Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  Upon such a
showing, the burden of going forward then shifts to the
nonmoving party to "produce specific facts, in suitable
evidentiary form, to establish the presence of a trialworthy
issue."  Id. (internal quotation marks and citations omitted).
In considering whether summary judgment is appropriate, the
Court "must view the record in the light most favorable to the

---

[3] Under Massachusetts law, "defamation . . . encompasses
libel and slander."  HipSaver, Inc. v. Kiel, 464 Mass. 517, 522
(2013).  The Court thus addresses Hi-Tech's libel and slander
claims jointly under the rubric of defamation.

nonmoving party and give that party the benefit of all reasonable inferences[.]" Id.

Cohen and Hi-Tech each moved for summary judgment. Cohen sought dismissal of the entire action, arguing, inter alia, that Hi-Tech failed to prove the elements of defamation and that Hi-Tech's other claims were merely derivative of its defamation claim. Hi-Tech, meanwhile, moved for partial summary judgment on the sole issue of whether Cohen's statements amounted to actionable fact, rather than nonactionable opinion. The Court discusses these motions in turn.

**A.   Cohen's Motion**

Cohen argues that he is entitled to judgment as matter of law on each of Hi-Tech's claims for defamation, product disparagement, and violation of chapter 93A. In particular, he argues that Hi-Tech's defamation claim -- and by extension, each of its other claims -- is legally infirm because it is premised on nonactionable statements, and because Hi-Tech failed to show that Cohen possessed the requisite level of fault. Def.'s Mem. 7-13. Hi-Tech maintains that the statements at issue constitute actionable statements of fact, that it has raised at least a triable issue as to Cohen's culpability, and that its additional claims represent viable routes to recovery. Pl.'s Mem. 5-11.

**1.   Defamation**

To prevail on a defamation claim under Massachusetts law, a plaintiff must show that: (1) "[t]he defendant made a statement, concerning the plaintiff, to a third party"; (2) "[t]he statement could damage the plaintiff's reputation in the community"; (3) "[t]he defendant was at fault in making the statement"; and (4) "[t]he statement either caused the plaintiff economic loss (traditionally referred to as 'special damages' or 'special harm'), or is actionable without proof of economic loss." Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-30 (2003) (internal footnotes and citations omitted). Cohen contends, first, that his statements are not actionable under this framework, and second, that Hi-Tech has failed to show the requisite level of fault under the third element of this test.

### a.   Actionable Statements

Cohen argues that he is entitled to judgment as matter of law on Hi-Tech's defamation claim because the statements at issue constitute non-actionable opinion, Def.'s Mem. 13-15, and that to the extent they include expressions of fact, they are nonetheless not actionable because they are privileged "scientific conclusions about unsettled matters of scientific debate," id. at 15-18.[4]  In response, Hi-Tech contends that

---

[4] Cohen also argues, in his opposition to Hi-Tech's motion for summary judgment, that he is immune from liability on the basis of his statements because they constitute petitioning activity.  Def.'s Opp'n Pl.'s Mot. Partial Summ. J. 9-12, ECF

Cohen's statements are statements of fact insofar as they are capable of being proven true or false.  Pl.'s Opp'n 10-14. Furthermore, it argues that the First Circuit has not recognized the "scientific debate" privilege and that, in any event, such privilege is inapposite here.  Id. at 14-15.

### i.   Fact Versus Opinion

"Statements of opinion are constitutionally protected and thus are not actionable."  Friedman v. Boston Broadcasters, Inc., 402 Mass. 376, 379 (1988).  Whether a statement constitutes fact or opinion depends on the totality of the circumstances, including "all the words used," any "cautionary terms used by the person publishing the statement," and "the

---

No. 69.  This argument is based on the Noerr-Pennington doctrine.  See id. (citing United Mine Workers v. Pennington, 381 U.S. 657, 670 (1965); Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961)).  But Noerr-Pennington does not guarantee absolute immunity for petitioning conduct.  See McDonald v. Smith, 472 U.S. 479, 485 (1985). Indeed, in McDonald, the Supreme Court rejected the principle that petitioning conduct was absolutely immune, reasoning that this "would elevate the Petition Clause to special First Amendment status[,]" and that "there is no sound basis for granting greater protection to statements made in a petition . . . than other First Amendment expressions."  Id.  Thus, even assuming, arguendo, that Cohen's statements constitute petitioning conduct (the Court's earlier conclusion to that effect was within the context of the Massachusetts anti-SLAPP statute only), it would appear to run counter to McDonald to treat them differently on that basis.  Cf. S. Middlesex Opportunity Council, Inc. v. Town of Framingham, 752 F. Supp. 2d 85, 131 (D. Mass. 2010) (Woodlock, J.) ("Although considerable First Amendment interests are relevant to defamation law . . . . those interests have been accommodated in the defamation law framework articulated by the Supreme Court.").

medium by which the statement is disseminated and the audience to which it is published." Cole v. Westinghouse Broadcasting Co., 386 Mass. 303, 309 (1982) (internal quotation marks and citations omitted). "The determination whether a statement is one of fact or opinion is generally considered a question of law[,]" id., at least where the statement "unambiguously constitutes either fact or opinion," Friedman, 402 Mass. at 379 (internal quotation marks and citations omitted). Where the statements at issue "could have been understood by the average reader in either sense, [however,] the issue must be left to the jury's determination." Lyons v. New Mass Media, Inc., 390 Mass. 51, 59 (1983) (internal quotation marks and citations omitted).

Cohen's statements concerning the nature of Hi-Tech's supplements and the safety of BMPEA fairly can be read as statements of fact or, at the very least, "opinions that imply an assertion of fact." North Shore Pharmacy Servs., Inc. v. Breslin Assocs. Consulting LLC, 491 F. Supp. 2d 111, 127 (D. Mass. 2007) (Gertner, J.). It may well be that, as Cohen avers, this is merely "a dispute of opinion over the meaning of the relevant scientific literature[,]" Def.'s Mem. 15. To be sure, certain of Cohen's statements, such as those about whether supplements containing BMPEA are safe or effective, are protected opinion. Other statements, however, such as those regarding whether BMPEA can be derived from Acacia rigidula and

whether BMPEA has been tested in humans, may be regarded by a jury as expressions of fact, particularly where, as Hi-Tech points out, Cohen represented his statements as factual in nature, Pl.'s Opp'n 12-14.[5]   Against this background, the line between fact and opinion is ambiguous.   Accordingly, it is up to a jury to determine if the statements at issue constitute nonactionable opinions.   See Lyons, 390 Mass. at 59.

### ii.   Scientific Conclusions

Cohen argues that his statements constitute scientific conclusions that ought be protected under the Second Circuit's reasoning in ONY, Inc. v. Cornerstone Therapeutics, Inc., 720 F.3d 490 (2d Cir. 2013).   That opinion has much to commend it. Indeed, this Court agrees that "[w]here . . . a statement is made as part of an ongoing scientific discourse about which there is considerable disagreement, the traditional dividing line between fact and opinion is not entirely helpful."   Id. at 497.   Further, the Court recognizes the conflict on which the ONY court zeroed in -- namely that "it is the very premise of

---

[5] The Court notes that while Hi-Tech makes much of Cohen's failure to qualify his statements as opinion, see Pl.'s Opp'n 12-13, express qualifications are not decisive on the question of whether a statement constitutes fact or opinion.   Cf. Milkovich v. Lorain Journal Co., 497 U.S. 1, 19 (1990) ("Simply couching statements in terms of opinion does not dispel the[] implication[] [of a false assertion of fact]; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'").

the scientific enterprise that it engages with empirically verifiable facts about the universe[,]" and yet "it is the essence of the scientific method that the conclusions of empirical research are tentative and subject to revision, because they represent inferences about the nature of reality based on the results of experimentation and observation." Id. at 496.

The Court nonetheless declines to hold that each of Cohen's challenged statements is protected, as matter of law, by a scientific debate privilege. First, as Hi-Tech points out, Pl.'s Opp'n 14, the First Circuit has yet to adopt this privilege (although it is not clear that it has had occasion to do so). Second, the scope of the privilege adopted in ONY is relatively narrow: "to the extent a speaker or author draws from conclusions from non-fraudulent data, based on accurate descriptions of the data and methodology underlying those conclusions, on subjects about which there is legitimate ongoing scientific disagreement, those statements are not grounds for a claim . . . ." ONY, 720 F.3d at 498.[6] Here, Cohen has failed to produce evidence that each of these conditions is met as matter

---

[6] Note that ONY dealt with whether statements were actionable under the Lanham Act, rather than with claims for common law defamation. 720 F.3d at 498. Hi-Tech has not argued that this distinction is meaningful.

of law.  Finally, although the Court is largely on the same page
as ONY, it sees no reason why, in this case, the existing legal
framework governing defamation is insufficiently protective of
Cohen's First Amendment rights.  Cohen may only be held liable
for injuries attributable to his statements if Hi-Tech can
prove, by a fair preponderance of the evidence, that Cohen's
statements amounted to expressions of fact, were false, and that
he was negligent in making them.  See infra.[7]  Should a jury
determine that he acted reasonably -- taking into account the
customs of the scientific profession, see Appleby v. Daily
Hampshire Gazette, 395 Mass. 32, 37 (1985) -- he will not be
liable, even if it turns out that his conclusions were wrong.[8]

---

[7] What is more, since Cohen's statements implicate a matter
of public concern, Hi-Tech must show Cohen acted with actual
malice in order to recover anything besides special damages, and
since this is a defamation claim, it must show that any injury
was proximately caused by reputational damage resulting from
Cohen's statements.  See infra.

[8] While the Court is convinced that its conclusion in this
case -- namely that the jury ought decide whether Cohen's
statements are actionable expressions of fact -- is correct, it
is sensitive to the concerns raised in ONY regarding the
application of the "fact-opinion paradigm of First Amendment
jurisprudence" to "[s]cientific academic discourse[.]"  720 F.3d
at 496.  Unsurprisingly, the case law in this area is
inconsistent, with some courts applying "somewhat idiosyncratic
[] reasoning as to whether a statement in a scholarly
controversy was defamatory at all[,]" other courts struggling to
determine "whether a 'core of objective evidence' would render
the statements verifiable, and thus actionable[,]" and still
others "seem[ing] to abandon applying precedent altogether,
essentially throwing up their judicial hands and declaring
academic criticism a libel-proof zone."  Matthew D. Bunker &

### b.    Fault

The parties disagree on the level of fault Hi-Tech must prove in order to prevail on its defamation claim, as well as on whether Hi-Tech meets the applicable standard.  Cohen argues that Hi-Tech constitutes a public figure and that the challenged statements pertain to a matter of public concern.  Def.'s Mem. 7-9, 12-13.  Accordingly, he argues, Hi-Tech is required -- and fails -- to demonstrate actual malice on Cohen's part.  Id. at 9-13.  Hi-Tech, meanwhile, disputes that it is a public figure and the existence of an underlying matter of public concern, and argues that even were the Court to apply an actual malice standard, Hi-Tech has made a showing sufficient to survive summary judgment.  Pl.'s Opp'n 4-10.  Neither party has it exactly right.

Since the applicable fault standard turns on (a) Hi-Tech's status as a public or private figure, and (b) whether Cohen's statements implicate a matter of public concern, this section addresses those issues before explaining the relevant standard

---

Charles D. Tobin, Facts, Nonfacts, and Academic Libel: The Jurisprudence of Reputation in the Ivory Tower, 31 Comm. Law. 1, 23-24 (2015).

In this Court's view, the interests of justice are best served by clearly instructing the jury that determining the statements at issue to be expressions of fact is a prerequisite to liability.  Here, should a jury find that all of Cohen's challenged statements, viewed in context, properly are categorized as expressions of opinion, its inquiry ends there.

and evaluating whether Hi-Tech has made a sufficient showing as
to fault on this summary judgment record.

### i.    Private versus Public Figure

Whether a plaintiff is a public figure is a matter of law.
E.g., Pendleton v. City of Haverhill, 156 F.3d 57, 67-68 (1st
Cir. 1998).  "[D]efendants bear the burden of demonstrating that
a plaintiff is a public figure."  Alharbi v. Theblaze, Inc.,
Civ. No. 14-11550-PBS, 2016 WL 4203402, at *14 (D. Mass. Aug. 9,
2016) (Saris, C.J.) (citations omitted).  A limited purpose
public figure[9] is one who "voluntarily injects himself or is
drawn into a particular public controversy and thereby becomes a
public figure for a limited range of issues."  Lluberes v.
Uncommon Prods., LLC, 663 F.3d 6, 13 (1st Cir. 2011) (internal
quotation marks and citations omitted).  The First Circuit
defines "public controversy" as "some specific question" that
"predate[s] the alleged defamation," that is "actually . . .
discuss[ed]," and whose resolution reasonably could be expected
to affect "persons beyond the immediate participants."  Id.
(internal quotation marks, citations, and alterations omitted).

---

[9] As Cohen chiefly argues that Hi-Tech ought have "public
figure" status by virtue of its position as a limited purpose
public figure -- as opposed to an "all-purpose public figure" or
an "involuntary public figure," Alharbi v. Theblaze, Inc., Civ.
No. 14-11550-PBS, 2016 WL 4203402, at *14 (D. Mass. Aug. 9,
2016) (Saris, C.J.) -- the Court focuses on this particular
breed of public figure.

To qualify as a limited purpose public figure, a party must have "attempted to influence the resolution" of the public controversy.  Id. at 14 (internal quotation marks and citations omitted).

Cohen argues that Hi-Tech is a public figure for the purpose of this case because it issued press releases in connection with the sale of the products at issue and has touted itself as an internationally renowned purveyor of dietary supplements.  Def.'s Mem. 8-9.  The First Circuit, however, has expressly rejected "the broad position of deeming all corporations that sell products public figures . . . in relation to allegedly defamatory statements made about the quality of their products."  Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 589 (1st Cir. 1980).  Cohen has not proven that Hi-Tech had any special access to the media or did more than merely sell and promote its products.  See id. at 589-90.  Contrast Lluberes, 663 F.3d at 17 (concluding that plaintiffs were limited purpose public figures where they "enjoyed access to the press and exploited it by orchestrating a PR blitz to garner public support and mute their critics").  Moreover, while the press releases it issued in the aftermath of Cohen's letter and the FDA warning letter were, strictly speaking, voluntary attempts to influence the outcome of the controversy, see Lluberes, 663 F.3d at 14, Cohen has not demonstrated that these

were sufficient to establish that Hi-Tech sought to "thrust [itself] into the vortex" of the public discourse, Gertz v. Robert Welch, Inc., 418 U.S. 323, 399 (1974); see also Alharbi, 2016 WL 4203402, at *15 (citation omitted) (plaintiff did not "thrust himself into the vortex" of public debate by granting interviews to defend himself against defendant's accusations). Thus, the Court concludes that Cohen has failed adequately to demonstrate that Hi-Tech constitutes a limited purpose public figure; Hi-Tech is therefore a private figure.

### ii.  Matter of Public Concern

"To qualify as a matter of public concern, . . . speech (based on the content, form, and context) must touch on issues in which the public (even a small slice of the public) might be interested . . . ." Pan Am Sys., Inc. v. Atl. N.E. Rails and Ports, Inc., 804 F.3d 59, 66 (1st Cir. 2015).  Whether a statement touches on a matter of public concern depends on the entire record, including "the speech's content and the public's perception of the topic," Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 133 (1st Cir. 1997), as well as "a speaker's subjective intent to create a public discourse[,]" McMann v. Doe, 460 F. Supp. 2d 259, 269 n.58 (D. Mass. 2006) (Tauro, J.) (internal citations omitted).

Cohen's statements qualify as pertaining to matters of public concern insofar as they implicate public health and

safety issues and call upon the FDA to utilize its enforcement
authority.  See, e.g. Howcroft v. City of Peabody, 51 Mass. App.
Ct. 573, 588 (2001) ("A specific violation of a law that creates
a risk to public health, safety or good governance . . . is a
matter of public concern." (quoting Myers v. Hasara, 226 F.3d
821, 827 (7th Cir. 2000))); Veilleux v. Nat'l Broadcasting Co.,
206 F.3d 92, 132 (1st Cir. 2000) ("the regulation of public
health or safety" may be a matter of public concern).  Hi-Tech's
argument that no issue of public concern existed until Cohen
published his article and undertook a media tour raising
questions about the safety of BMPEA, Pl.'s Opp'n 6, fails
because it in effect presumes the falsity of Cohen's
statements.[10]  That Cohen sought publicly to contribute to the
conversation about the safety of dietary supplements further
supports the Court's conclusion that his speech relates to a
matter of public concern.  Cf. Levinsky's, 127 F.3d at 133
(alterations in original) (internal quotation marks and
citations omitted) (a private statement whose content does not
clearly pertain to "a matter of inherent public concern" may

---

[10] Moreover, Hi-Tech's reliance on Bruno & Stillman in
support of its argument that Cohen's statements did not touch on
a matter of public concern, Pl.'s Opp'n 6-7, is misplaced, since
that case grappled with the question of whether there was a
public controversy for the purpose of deciding whether the
plaintiff constituted a public figure.  See 633 F.2d at 589-90.

nonetheless qualify as a statement on a matter of public concern
depending on the "the speaker's subjective intent to contribute
to any . . . public discourse").

### iii. Negligence Versus Actual Malice

As Hi-Tech is a private, rather than public, figure, Hi-
Tech need only show Cohen was negligent to prevail on its
defamation claim.  E.g., New England Tractor-Trailer Training of
Conn., Inc. v. Globe Newspaper Co., 395 Mass. 471, 477 (1985)
("private persons or entities may recover compensation (assuming
proof of all other elements of a claim for defamation) on proof
that the defendant was negligent in publishing defamatory words
which reasonably could be interpreted to refer to the
plaintiff.").  Since Cohen's statements implicate an issue of
public concern, however, Hi-Tech is limited to compensatory
damages (i.e., presumptive and punitive damages are unavailable)
unless it can demonstrate actual malice.  Levinsky's, 127 F.3d
at 128 ("a private individual who seeks damages for a defamatory
statement involving a matter of public concern cannot recover
presumed or punitive damages absent a showing of actual
malice").[11]

---

[11] Cohen reads Levinsky's too broadly when he concludes on
the basis of it that "[b]ecause Dr. Cohen's statements relate to
a matter of public concern, Hi-Tech must show 'actual malice' to
prevail[,]" Def.'s Mem. 13.  As the quoted language from
Levinsky's makes clear, that case supports Cohen's conclusion
only insofar as it relates to claims for compensatory damages.

On the summary judgment record, Hi-Tech has failed to demonstrate, "by clear and convincing proof," that Cohen acted with "actual malice."  Bruno & Stillman, 633 F.2d at 586. Acting with "actual malice," in these circumstances, means "with knowledge that [the challenged statement] was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 280 (1964).  Proof that "a reasonably prudent man would [not] have published, or would have investigated before publishing," is not sufficient to establish reckless disregard.  St. Amant v. Thompson, 390 U.S. 727, 731 (1968).  Rather, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Id.  While Hi-Tech seeks to demonstrate that Cohen acted with actual malice by emphasizing his "bold and broad statements," pointing out apparent inconsistencies, and suggesting he took a cavalier approach to his public statements, Pl.'s Opp'n 8, the Court is not convinced that Hi-Tech has raised a genuine issue of material fact as to malice.  As there is insufficient evidence for a jury reasonably to infer that Cohen "serious[ly] doubt[ed]" the veracity of his statements, St. Amant, 390 U.S. at 730, and yet published them anyway, the Court rules that, as matter of law, Hi-Tech cannot establish actual malice.

Accordingly, punitive and presumptive damages are unavailable.
See Levinsky's, 127 F.3d at 128.

Hi-Tech has, however, raised questions of fact as to
whether Cohen's statements were negligent.  In order to
establish negligence in a defamation action, a plaintiff must
show that the defendant failed "to act reasonably in checking on
the truth or falsity of the [challenged] communication before
publishing it[,]" keeping in mind "[c]ustoms and practices
within the [defendant's] profession[.]"  Appleby, 395 Mass. at
37 (internal quotation marks, citations, and alterations
omitted).  Judged against this significantly less onerous
standard, the evidence Hi-Tech offered in support of its actual
malice argument suffices to create a genuine dispute of material
fact.  Indeed, a jury could conclude that a reasonable person in
Cohen's position (with like experience and background) ought
have taken additional measures to ensure the accuracy of his
statements before effecting their publication.  Thus, subject to
the proviso above regarding damages, Hi-Tech's defamation claim
(counts one and two of its complaint) survives summary judgment.

### 2.  **Product Disparagement**[12]

---

[12] Hi-Tech labels its third count as a claim for "product
disparagement/trade libel."  Compl. 20.  The terms
"disparagement," "product disparagement," "commercial
disparagement," and "trade libel" are interchangeable.  See
HipSaver, Inc. v. Kiel, 464 Mass. 517, 518 n.1 (2013) ("The tort
of 'commercial disparagement' also is known as . . . 'trade

Cohen argues that Hi-Tech's product disparagement claim is wholly derivative of its defamation claim and that the disparagement claim therefore must fail for the reasons Cohen set forth in support of his argument for judgment as matter of law on the defamation claim.  Def.'s Mem. 18.  While the Court agrees with Cohen's conclusion -- i.e., it rules that Cohen is entitled to judgment as matter of law on Hi-Tech's product disparagement claim -- it pauses to make a few observations about the differences between this claim and the defamation claim (which, as discussed supra, survives summary judgment, at least as to compensatory damages).

As the Supreme Judicial Court recently articulated in HipSaver, Inc. v. Kiel, 464 Mass. 517 (2013),

> [a]n action for commercial disparagement is similar in many respects to an action for defamation, but there are important differences . . . .  A defamation action, which encompasses libel and slander, affords a remedy for damage to the reputation of the injured party.  By comparison, an action for commercial disparagement affords a remedy for harm to the economic interest of the injured party that results in pecuniary loss . . .
>
> . . . . [I]n order to prevail on a claim alleging commercial disparagement, a plaintiff must prove that a defendant: (1) published a false statement to a person other than the plaintiff; (2) "of and concerning" the plaintiff's products or services; (3)

libel.'") (citation omitted); Great Am. Ins. Co. v. Riso, Inc., No. Civ.A. 04-12260-GAO, Civ.A. 04-12397-GAO, 2006 WL 4158730, at *4 (D. Mass. Mar. 31, 2006) (O'Toole, J.) ("[C]ourts hav[e] variously described the same type of wrong as 'disparagement,' 'product disparagement,' [and] 'trade libel.'").

with knowledge of the statement's falsity or with
reckless disregard of its truth or falsity; (4) where
pecuniary harm to the plaintiff's interests was
intended or foreseeable; and (5) such publication
resulted in special damages in the form of pecuniary
loss.

Id. at 522-23 (internal citations and footnotes omitted).  The

HipSaver court went on to note that the third element "mirrors

what has been termed 'actual malice' in the defamation context."

Id. at 529-30.

HipSaver makes clear that unlike in a defamation case

against a private figure, in which a plaintiff need only show

the defendant was negligent, e.g., New England Tractor-Trailer

Training, 395 Mass. at 477, a plaintiff must establish actual

malice[13] in order to prevail on a product disparagement claim.

As discussed supra, Hi-Tech has failed to satisfy its burden as

to this element.  Accordingly, it cannot recover for product

disparagement.[14]

_____

[13] Although the Supreme Judicial Court saw "no need formally
to adopt the term 'actual malice' in [the product disparagement]
context," HipSaver, 464 Mass. at 531, it acknowledged the
equivalency of the actual malice standard and the product
disparagement fault standard, id. at 529-30, which it derived
directly from the Restatement (Second) of Torts, id. at 531.

[14] The subtle distinction between claims for defamation and
product disparagement -- they "may merge when a disparaging
statement about a product reflects on a reputation of the
business that . . . sold it[,]" HipSaver, 464 Mass. at 522 n.6
(quoting Dairy Stores, Inc. v. Sentinel Publ. Co., 516 A.2d 220,
224 (N.J. 1986)) -- is significant in a case like this one
insofar as it bears on the scope of available relief.  Hi-Tech
may recover compensatory damages for injury to its "reputation"

3.    **Chapter 93A**

Cohen argues that he is entitled to judgment as matter of law on Hi-Tech's claim under Massachusetts General Laws, chapter 93A, because Hi-Tech's chapter 93A claim suffers (according to Cohen) from the same fatal flaws as its defamation claim, and because there was no underlying business relationship between the parties, as is necessary to give rise to a chapter 93A claim.  Def.'s Mem. 18-19.  While Hi-Tech correctly points out that chapter 93A is a broadly construed remedial statute, Pl.'s Opp'n 16-17, it fails to convince this Court that the actions at issue here fall within its ambit.  Indeed, the courts of the

---

(i.e., defamation), but not for "harm to [its] economic interests[,]" (i.e., product disparagement).  Id. at 522; see also Dairy Stores, 516 A.2d at 224 (internal citations omitted) ("A defamation action . . . affords a remedy for damage to one's reputation.  By comparison, an action for product disparagement is an offshoot of the cause of action for interference with contractual relations, such as sales to a prospective buyer.").

Put another way, were a jury to find that Hi-Tech's business suffered because Cohen's statements "discredit[ed] the quality or utility of [Hi-Tech's] goods, without in any way reflecting unfavorably on the producer or owner[,]" Restatement (Second) of Torts § 573 cmt. g, this would amount to disparagement and would be an insufficient basis on which to award damages, since Hi-Tech's disparagement claim fails as matter of law.  Hi-Tech's entitlement to damages hinges on a jury's finding that Hi-Tech's business suffered because Cohen's statements harmed its reputation, and that harm produced economic loss.  Cf. Picker Int'l, Inc. v. Leavitt, 865 F. Supp. 951, 964 (D. Mass. 1994) (Wolf, J.) ("Generally, where the discussion involves a rival's services or product, it is not considered libelous unless it 'imputes to the corporation fraud, deceit, dishonesty, or reprehensible conduct.'" (quoting U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 924 (3d Cir. 1990))).

Commonwealth have made clear that recourse under chapter 93A is appropriate only where the parties were "engaged in trade or commerce with each other and therefore acting in a business context." Stop & Shop Supermarket Co. v. Loomer, 65 Mass. App. Ct. 169, 175 (2005) (internal quotation marks and citations omitted). The Court fails to discern any sort of transactional relationship between Hi-Tech and Cohen. Thus, judgment as matter of law for Cohen on Hi-Tech's chapter 93A claim is proper.

### B. Hi-Tech's Motion

Hi-Tech sought summary judgment on a particular narrow issue -- namely, it asked this Court to rule, as matter of law, that Cohen's statements constituted actionable statements of fact, rather than protected opinion. Br. Supp. Pl. Hi-Tech's Mot. Partial Summ. J. 1, ECF No. 57. While the Court denied Cohen's motion for summary judgment requesting the opposite ruling, see supra, summary judgment for Hi-Tech on this ground is no more appropriate. As Cohen's statements could be construed by a reasonable jury either as fact or opinion, such determination is properly reserved to the factfinder.

### III. CONCLUSION

For the foregoing reasons, the Court's earlier order, ECF No. 88, GRANTED IN PART and DENIED IN PART Cohen's motion for

summary judgment, ECF No. 59, and DENIED Hi-Tech's motion for

partial summary judgment, ECF No. 56.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE